Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
Adrianna Simonelli, OSB No. 222481
ASimonelli@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile: +1.503.727.2222

*Attorneys for Defendant University of Oregon*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ASHLEY SCHROEDER, KENDALL CLARK, HALLI FIELDS, NATASHA GEORGE, JOSIE GRIFFITHS, JADE BERNAL, DAHLIA MCALLISTER, PRESLEY MCCASKILL, ABIGAIL PLEVIN, VALERIE PETERSON, ELLA TYUS, SIULOLOVAO FOLAU, ALEX LAITA, BATIA ROTSHTEIN, ZOE ALMANZA, BEATRICE WETTON, MIA LOPEZ, DELANEY HOPEN, CARLY WALLACE, SAVANNAH SIEGRIST, ANASTASIA LIMA, MADELYN LAFOLLETTE, ALEXANDRA HADEN, JOSIE COLE, ALAINA THOMAS, VIVIAN DONOVAN, ELISE HAVERLAND, RIVER RIBEIRO, SOPHIA SCHMITZ, SYDNEY WEDDLE, CLAIRE DALEY and ANNA MARIA KNIGHT, Individually and on behalf of all those similarly situated,

Plaintiffs,

v.

UNIVERSITY OF OREGON,

Defendant.

Case No. 6:23-CV-01806-MC

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS FOR COUNT I**

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS


Page

MEMORANDUM OF LAW ... 1

I. Introduction. ... 1

II. Background. ... 1

A. The University's varsity and club athletics programs ... 3

B. Plaintiffs' claims. ... 3

III. The Court should grant Judgment on the Pleadings on Count I because Plaintiffs fail to allege they have been treated less favorably than similarly situated male student-athletes. ... 3

A. Legal standard for Judgment on the Pleadings. ... 4

B. The legal standard for a Title IX treatment and benefits claim. ... 4

C. Plaintiffs' arguments fail because they only compare women's beach volleyball to football. ... 5

D. Plaintiffs' attempt to create a new Title IX theory based on name, image and likeness benefits should be rejected ... 10

CONCLUSION ... 10




**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Street
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bostock v. Clayton County*,
590 U.S. 644 (2020)....................3

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)....................4

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979)....................3

*Cano v. Harlandale Indep. Sch. Dist.*,
No. SA-19-CV-01296, 2020 WL 7385843 (W.D. Tex. Dec. 16, 2020)....................4

*City of L.A., Dep't of Water & Power v. Manhart*,
435 U.S. 702 (1978)....................3

*Coontz v. Katy Indep. Sch. Dist.*,
159 F.3d 1355 (5th Cir. 1998) (unpublished)....................4

*Freeman v. City of Santa Ana*,
68 F.3d 1180 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995)....................3

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020)....................3

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)....................3

*Murphy v. Northside Indep. Sch. Dist.*,
No. 23-50369, 2024 WL 1554057 (5th Cir. Apr. 10, 2024)....................3

*Murphy v. Northside Indep. Sch. Dist.*,
No. SA-22-CV-00123, 2023 WL 3232614 (W.D. Tex. May 3, 2023), *aff'd*,
No. 23-50369, 2024 WL 1554057 (5th Cir. Apr. 10, 2024)....................4

*Ramirez v. Lincare, Inc.*,
No. 16-CV-00663, 2016 WL 7045599 (D. Or. Dec. 2, 2016)....................2

*United States v. Teng Jiao Zhou*,
815 F.3d 639 (9th Cir. 2016)....................2



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

**STATUTES**

20 U.S.C. § 1681(a) ....................3

**RULES**

Fed. R. Civ. P. 12(c) ....................2

LR 7-1 ....................1

Rule 12(b)(6)....................2

**OTHER AUTHORITIES**

NCAA, Bylaws Art. 11.1.3, *Conduct and Employment of Athletics Personnel* (2023), https://web3.ncaa.org/lsdbi/search/bylawView?id=11563....................5



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## LR 7-1 CERTIFICATION

In compliance with LR 7-1, counsel for the University of Oregon certifies that they conferred in good faith via telephone conference with Plaintiffs' counsel regarding each defense that is the subject of this Motion, but the parties were unable to resolve these disputes.

## MOTION

The University of Oregon moves for Judgment on the Pleadings under Federal Rule of Civil Procedure (Rule) 12(c) on Count I in full. The Beach Volleyball Plaintiffs fail, on the face of the Complaint, to state a viable treatment and benefits claim.

## MEMORANDUM OF LAW

### I. Introduction.

Plaintiffs—26 current and former members of the women's varsity beach volleyball team and six current members of the women's club rowing team—allege Title IX violations against the University of Oregon (the University) relating to athletics participation, athletic financial aid, and treatment and benefits. Plaintiffs' Complaint suffers facial deficiencies that require a winnowing of this litigation to all but a few of Plaintiffs' claims. In particular, Count I relating to the treatment and benefits for beach volleyball players should be dismissed because Plaintiffs do not allege that they have been treated less favorably than similarly situated male student-athletes at the University.

### II. Background.

As noted in the Answer, the University denies Plaintiffs' allegations that it violated Title IX. Plaintiffs do not allege that the University intentionally discriminated against any of its varsity student-athletes or club sport participants based on gender, which is a prerequisite for Title IX discrimination claims. The Complaint's heavy reliance on comparing beach volleyball to football is not how a proper Title IX analysis works and is therefore specious. For example, the Complaint fails to acknowledge that the University sponsors twelve women's varsity teams, compared to only eight men's varsity teams. The Complaint fails to acknowledge that all



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

student-athletes receive the same *Alston* payments, and that all student-athletes have access to the same tutoring and other academic services. The Complaint fails to acknowledge that most of the men's and women's teams (*e.g.,* men's and women's basketball, men's and women's track and field, men's and women's golf) use the same facilities, and that some women's facilities are newer, nicer and more proximately located to the University's main campus than the comparable men's sport (compare Jane Sanders Stadium (women's softball) with PK Park (men's baseball)). The University provides all varsity student-athletes and club program participants with a high-quality experience fully in compliance with Title IX.

**A. The University's varsity and club athletics programs.**

The University, a current member of the Pac-12 Conference and future member of the Big Ten Conference, sponsors 12 women's Division I varsity teams (acrobatics and tumbling, basketball, beach volleyball, cross country, golf, lacrosse, soccer, tennis, indoor track and field, outdoor track and field, and indoor volleyball), and eight men's Division I varsity teams (baseball, basketball, cross country, football, golf, tennis, indoor track and field, and outdoor track and field). Compl. ¶ 344; Answer ¶ 344.

When the University began its beach volleyball program in the 2014–15 season, the sport was new to both the National Collegiate Athletics Association (NCAA) as well as the University. Compl. ¶ 561; Answer ¶¶ 8, 377. The University intended the beach volleyball team to be a crossover sport for the varsity student-athletes already playing on the women's indoor volleyball team. The University already funded the maximum scholarships allowed by the NCAA for the women's indoor volleyball team. Answer ¶ 8. For many seasons, the beach volleyball roster was composed of only those athletes who were already playing indoor volleyball. Answer ¶ 8. Over time, beach volleyball became a more established sport in the NCAA and at the University, and within the last few years, the University's beach volleyball roster began to include mostly or solely student-athletes who played beach volleyball only. Answer ¶ 8.

The University did not already have sand courts on campus when the beach volleyball



Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

program began. To allow the beach volleyball team to compete, the University contracted to use two sand volleyball courts at the City of Eugene's Amazon Park. Answer ¶ 8. Over the last several years, the University has been developing plans to construct a dedicated beach volleyball facility on campus and has steadily increased funding for the team in an effort to grow the sport. Indeed, prior to the filing of the Complaint, the University had already selected a central on-campus location for a new beach volleyball facility after completion of an extensive campus planning process, with the design phase now well underway, and also allocated the NCAA maximum six scholarships to beach volleyball for use in recruitment in the upcoming years. Compl. ¶¶ 77–78; Answer ¶¶ 8, 15–16, 93.

The University also operates a robust club sports program with 41 club teams, including women's rowing. Compl. ¶ 2, 568; Answer at 3.

### B. Plaintiffs' claims.

Plaintiffs' Complaint alleges three counts. Only Count I is at issue in this Motion.

**Count I.** The Beach Volleyball Plaintiffs bring, on behalf of themselves and a putative class, claims under Title IX for unequal treatment and benefits. Compl. ¶¶ 595–603. They allege that "Defendant fails to provide female varsity student-athletes with treatment and benefits equal to those they provide to male varsity student-athletes. This failure constitutes sex discrimination in violation of Title IX." *Id*. ¶ 599. Plaintiffs further allege that the harm suffered "includes lost educational opportunities, lost competitive advantages, less quality in participation opportunities, being subjected to sex discrimination, and the degrading and stigmatizing effects of that treatment." *Id*. ¶ 602.

## III. The Court should grant Judgment on the Pleadings on Count I because Plaintiffs fail to allege they have been treated less favorably than similarly situated male student-athletes.

Plaintiffs focus on comparing men's football and women's beach volleyball to each other and then analogize that to all other sports, both men's and women's, rather than showing intentional discrimination or that they were treated less favorably than similarly situated male



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

student-athletes. Therefore, Count I must be dismissed.

**A. Legal standard for Judgment on the Pleadings.**

A motion for judgment on the pleadings may be brought after the pleadings are closed but within such time as not to delay the trial. Fed. R. Civ. P. 12(c). "Rule 12(c) is 'functionally identical' to Rule 12(b)(6)" and "'the same standard of review' applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted). Rule 12(c) requires a court to grant judgment on the pleadings and dismiss the complaint where, accepting the well-pleaded material facts in the complaint and answer as true, the plaintiff fails to plead sufficient facts to support the relief sought. *See United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (citing *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Ramirez v. Lincare, Inc.*, No. 16-CV-00663, 2016 WL 7045599, at *2 (D. Or. Dec. 2, 2016) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989)).

**B. The legal standard for a Title IX treatment and benefits claim.**

Title IX of the Education Amendments of 1972 prohibits sex discrimination by recipients of federal education funding. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a).

Private rights of action under Title IX require a showing of intentional discrimination, i.e. that a plaintiff was treated differently *because* they were female. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–93 (1979); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The Supreme Court has recognized that the on the basis of sex language in Title IX indicates a but-for causal relationship. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 657–58 (2020). The relevant test is whether plaintiff was treated "worse than others who are similarly situated." *Id.*; *see also Murphy v. Northside Indep. Sch. Dist.*, No. 23-50369, 2024 WL 1554057, at *1 (5th Cir. Apr. 10,



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

2024) ("When a plaintiff alleges that a school has an official policy of intentional discrimination on the basis of sex, the 'proper test' under Title IX is whether the school 'intended to treat women differently on the basis of their sex.'" (citation omitted)); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (("In the Title IX context, discrimination means treating that individual worse than others who are similarly situated.") (cleaned up) (quoting *Bostock*, 590 U.S.C. at 657)). The "simple test" is whether allegations show "treatment of a person in a manner which but for that person's sex would be different." *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978) (citation omitted). As the Ninth Circuit has explained, the purpose of identifying a "similarly situated" class against which the plaintiff's class can be compared, is to "isolate the factor allegedly subject to impermissible discrimination" because the "similarly situated group is the control group." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (cleaned up), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995).

### C. Plaintiffs' arguments fail because they only compare women's beach volleyball to football.

In the present matter, Plaintiffs have not adequately pled discriminatory treatment, because they have not alleged that they were treated adversely *because of their sex*.

Plaintiffs rely exclusively on a comparison between football and beach volleyball. The Complaint is replete with allegations regarding the benefits afforded to the football team, including 16 photos—whose origin is unknown—purporting to show the University's football facilities. Compl. ¶¶ 387–90, 409, 414, 419, 421, 435, 453–54, 458–67, 512, 514. And Plaintiffs describe the allegedly singularly poor treatment received by beach volleyball. *Id.* ¶¶ 392–404, 406, 422–23, 425–33, 436, 440, 472–95, 499, 501–08, 513. But it is axiomatic, and apparent from the face of the pleadings, that football and beach volleyball are not suitable comparators as a matter of law. The pleadings make clear that there are substantial, inherent differences between the sports. With respect to team size, the football team has approximately 120 student-athletes,



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

comprising more than one-third of Oregon's male student-athletes; by contrast, the beach volleyball team has around 20 student-athletes. *Id.* ¶ 381. Football is also a full-contact sport, "high-risk" sport, unlike beach volleyball, and game strategy and studying footage requires a large meeting space and multiple coaches. Answer ¶¶ 6, 10. The two sports have different schedules, different coaching needs, different equipment needs, and different travel needs, that render football not an appropriate comparator when it comes to equipment and supplies, scheduling of games and practice times, travel, coaching, facilities, medical services, publicity, and recruiting—which are the areas where Plaintiffs seek to make a comparison. *See* Compl. ¶¶ 352–531. Given these inherent differences, Plaintiffs have not identified any similarly situated male student-athlete that is allegedly receiving less favorable treatment and benefits.

Without an appropriate comparator or control group, Plaintiffs cannot show any alleged unequal treatment is on account of their sex. At most, Plaintiffs allege that beach volleyball is treated differently than football, but any inference that this is due to sex is mere conjecture. Other courts have likewise held, at the pleadings stage, that a comparison of football to other sports without specific allegations of gender-based discrimination is insufficient to state a claim under Title IX. For example, in *Murphy v. Northside Indep. Sch. Dist.*, No. SA-22-CV-00123, 2023 WL 3232614, at *6 (W.D. Tex. May 3, 2023), *aff'd*, No. 23-50369, 2024 WL 1554057 (5th Cir. Apr. 10, 2024), the court granted a motion to dismiss Title IX claims where plaintiff at most identified a discrepancy between sports, cheerleading and football, but had not alleged any facts that the adverse treatment was due to her gender. Similarly, in *Cano v. Harlandale Indep. Sch. Dist.*, No. SA-19-CV-01296, 2020 WL 7385843, at *4 (W.D. Tex. Dec. 16, 2020), the court granted a motion to dismiss Title IX claims, holding "As there are myriad differences between football and the dance team besides the gender of the majority of each activity's participants, this is not differential treatment of similarly situated individuals. Title IX liability does not arise based solely on the fact that different sports teams might require different treatment based on the unique training, safety, performance, and other specific factors related to each." And, in *Coontz*



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*v. Katy Indep. Sch. Dist.*, No. 98-20188, 1998 WL 698904, at *6 (5th Cir. Sept. 14, 1998), the court upheld the dismissal of the case where plaintiff could not show "the groups are situated similarly, or that the difference in treatment between football players and cheerleaders is traceable to the sex that predominates among the members and not to other differences between the groups."

Nor have Plaintiffs adequately alleged a program-wide disparity in the treatment of female and male student-athletes, *i.e.*, that the University has a pattern or practice of treating its male student-athletes as a whole better than female student-athletes. *See* 44 Fed. Reg. 239 (Dec. 11, 1979), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html. This is how the U.S. Department of Education's Office for Civil Rights (OCR) approaches program reviews involving allegations of discrimination with respect to athletic treatment and benefits. Under this framework, Plaintiffs must allege significant program-wide disparities, from which the inference can be made that those disparities are on account of gender and not some other legitimate reason unrelated to sex. But, aside from a few conclusory allegations that male student-athletes are generally treated better than female student-athletes, Plaintiffs offer no specific allegations regarding the comparative treatment of men's to women's sports on a program-wide basis. Rather, it is undisputed based on the pleadings that every program-wide benefit that is available to all male student-athletes is also available to all female student-athletes. This includes access to free meals, academic services, and *Alston* benefits. Answer ¶¶ 30, 456. And, to the extent there are variations between men's and women's programs, these differences are sport-related and "Title IX does not require institutions to allocate benefits equally to all of its teams." *Balow v. Mich. State Univ.*, 1:21-cv-44, 2021 WL 4316771, at *8 (W.D. Mich. Sept. 22, 2021). Because female student-athletes in the same sport as male student-athletes receive the same, if not better, facilities and equipment, *see e.g.*, Answer ¶ 457, the player's sex is therefore not a contributing reason to any identified disparities and Plaintiffs have not alleged facts sufficient to state a claim under Title IX.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

For these reasons, courts have held that merely alleging a few sport-specific differences, including a difference in the per capita spend between men's programs and women's programs as reflected in Equity in Athletics Data Analysis reports required by the Department of Education, is not sufficient to state a claim under Title IX. Plaintiffs must plead something more. The district court in *Balow*, for example, explained that "neither the statute nor the regulations call for identical programs for male and female athletes" and that focusing just on "a few differences between a handful of 'priority' teams at MSU and other teams," including differences in the locker rooms, facilities, and staffing, does "not permit the Court to infer more than the mere possibility of sex discrimination." *Balow*, 2021 WL 4316771 at *8–9 (internal citation omitted).[1] Courts have also observed that statistics alone will seldom prove discriminatory intent. There may be cases where statistics establish "a clear pattern, unexplainable on grounds other than" protected status, "but such cases are rare." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). As the Ninth Circuit has explained in the related Title VII context:

> Whatever the impact of plaintiff's statistical evidence is in fact, the legal question is whether that impact is sufficiently gross or stark that a court must infer that it was intended by the defendant. That an employer was aware of, or totally indifferent to the racially discriminatory impact of its hiring policies is not of itself sufficient to establish a prima facie case and shift the burden of explanation to the defendant. After all, discriminatory intent implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part "because of" not merely "in spite of," its adverse effects upon an identifiable group. (Formatting and case cite omitted).

---

[1] Indeed, OCR originally proposed a per capita expenditure test, but then expressly removed such a test from the 1979 Policy Interpretation, because "purely financial measures such as the per capita test do not in themselves offer conclusive documentation of discrimination, except where the benefit or opportunity under review, like a scholarship, is itself financial in nature." 44 Fed. Reg. at 71414. Further, OCR observed, "[t]he equal average per capita standard was not a standard by which noncompliance could be found," because even if there were differences in the financial data, "the Department would still have the burden of demonstrating that the institution was actually engaged in unlawful discrimination." *Id*. at 71414, 71420.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 552 (9th Cir. 1982). Because Plaintiffs' statistics are so heavily weighted by the unique aspects of football, they cannot standing alone prove intent by the University to discriminate based on gender.

In its 1979 Policy Interpretation,[2] OCR also rejects the claim Plaintiffs try to plead, explaining that "identical benefits, opportunities, or treatment are not required, provided the overall effect of any differences is negligible." 44 Fed. Reg. 239 at 71415. Thus, OCR does not and "cannot base noncompliance upon a failure to provide arbitrarily identical programs, either in whole or in part." *Id*. at 71422. When it comes to the unique and outsized effect of football, OCR recognized that some aspects of athletic programs may not be equivalent for men and women because of (a) the unique aspects of particular sports, including rules of play, nature/replacement of equipment, rates of injury resulting from participation, nature of facilities required for competition, and the maintenance/upkeep requirements of those facilities, (b) legitimately sex-neutral factors related to special circumstances of a temporary nature, such as annual fluctuation in recruiting activity, (c) operational considerations, for example if certain sports draw larger crowds and then require larger facilities or more event management support, and (d) when institutions are undertaking voluntary affirmative actions to increase participation opportunities for members of the underrepresented sex—factors that are all present here. 44 Fed. Reg. at 71415–16. The guidance identifies football as "unique" among sports, given the size of the team and the expense of the operation, and states that differences in football crowd size, equipment, and facilities serve as legitimate sex-neutral factors under (a) and (c). *Id*. at 71415, 71419. Given the uniqueness of football, alleging program-wide disparities between men's and women's teams requires a review of all sports within the program, and not just a comparison

---

[2] On June 28, 2024, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ___ (2024) the United States Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council*. The Supreme Court held that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the [Administrative Procedures Act] requires." *Loper Bright Enter.*, 603 U.S. __ (2024). Therefore, this Court is prohibited from deferring to an agency interpretation of the law because a statute is ambiguous. *Id*.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

between beach volleyball and football.

For these reasons, Plaintiffs have not pled a viable Title IX discrimination claim, and their allegations must be dismissed.

**D. Plaintiffs' attempt to create a new Title IX theory based on name, image, and likeness benefits should be rejected.**

The Beach Volleyball Plaintiffs also attempt to assert a novel legal theory in Count I: that name, image, and likeness (NIL) funding and support from third-parties are subject to Title IX. But, as Plaintiffs acknowledge, the NIL system is administered through independent collectives—not by the University. Compl. ¶¶ 520, 522, 524–25. And Plaintiffs have not alleged that the University directly or even indirectly controls the allocation of NIL proceeds by these third-party collectives. *Id.* ¶¶ 520–25. Further, under the current NCAA Bylaws, universities cannot assist student-athletes in marketing their athletics ability or reputation:

> **Representing Individuals in Marketing Athletics Ability/Reputation.** Staff members of the athletics department of a member institution shall not represent, directly or indirectly, any individual in the marketing of athletics ability or reputation to an agent, a professional sports team or a professional sports organization, including receiving compensation for arranging commercial endorsements or personal appearances for former student-athletes . . . .

NCAA, Bylaws Art. 11.1.3, *Conduct and Employment of Athletics Personnel* (2023), https://web3.ncaa.org/lsdbi/search/bylawView?id=11563.

Plaintiffs also do not offer any allegations explaining how or why NIL funding and opportunities—that are provided by outside entities to individual student-athletes—should be considered part of the treatment and benefits that are offered by the University to its student-athletes. The outside entities offering those NIL opportunities are private companies that are not subject to Title IX. No law or facts support grafting an outside entities' activities onto the University, and then making the University responsible for those entities' actions.

**CONCLUSION**

Accordingly, the University respectfully asks that the Court grant Defendant's Motion for



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Judgment on the Pleadings on Count I for the reasons given above.

DATED: July 3, 2024.

**PERKINS COIE LLP**

By: */s/ Stephen F. English*
Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
Adrianna Simonelli, OSB No. 222481
ASimonelli@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000

*Attorneys for Defendant University of Oregon*