Jennifer J. Middleton (OSB No. 071510)
jmiddleton@justicelawyers.com
**JOHNSON JOHNSON LUCAS &
MIDDLETON PC**
975 Oak St., Ste. 1050
Eugene, OR 97401-3124
Tel: 541-484-2434

Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050

Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
mrubin@altb.com
ecervantez@altber.com
mmurray@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151

[Additional counsel listed in signature block]

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISON

| | |
|---|---|
| ASHLEY SCHROEDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF OREGON,<br><br>Defendant. | Case No.  6:23-cv-01806-MC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION FOR COUNT I AND COUNT II (ECF 27)**<br><br>Request for Oral Argument |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD .............................................................................................. 3

ARGUMENT ........................................................................................................... 4

    I.  The Court has jurisdiction over the beach volleyball plaintiffs' classwide claims for declaratory and injunctive relief. ................................................................... 4

        A.  The beach volleyball plaintiffs have standing to seek classwide declaratory and injunctive relief. ...................................................................................... 5

        B.  The beach volleyball plaintiffs' claims for classwide declaratory and injunctive relief are not moot. .................................................................................... 7

    II.  The beach volleyball plaintiffs have standing to pursue damages to remedy UO's discriminatory unequal provision of athletic financial aid. ................................ 10

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by C.B. v. Haw. State Dep't of Educ.*,
    334 F.R.D. 600 (D. Haw. 2019),
    *rev'd*, 30 F.4th 828 (9th Cir. 2022) ...................................................................9

*Acosta–Huerta v. Estelle*,
    7 F.3d 139 (9th Cir. 1992) .............................................................................11

*Balow v. Mich. State Univ.*,
    24 F.4th 1051 (6th Cir. 2022) .....................................................................13, 14

*Barnes v. Gorman*,
    536 U.S. 181 (2002)...........................................................................................14

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) .........................................................................5, 7

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) .........................................................................16

*Beasley v. Ala. State Univ.*,
    3 F.Supp.2d 1304 (M.D. Ala. 1998) .............................................................12

*Beasley v. Ala. State Univ.*,
    966 F.Supp. 1117 (M.D. Ala. 1997) ..........................................................9, 13

*Belgau v. Inslee*,
    975 F.3d 940 (9th Cir. 2020) ........................................................................8, 9

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999)..............................................................................6

*Bowen v. Energizer Holdings, Inc.*,
    118 F.4th 1134 (9th Cir. 2024) .........................................................................4

*Cole v. Oroville Union High Sch. Dist.*,
    228 F.3d 1092 (9th Cir. 2000) ..........................................................................9

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022)...........................................................................................14

PLS.' OPP. TO DEF.'S MOT. TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

*Cummings v. Premier Rehab, P.L.L.C.*,
No. 4:18-cv-649-A, 2019 WL 227411 (N.D. Tex. Jan. 16, 2019),
*aff'd*, 948 F.3d 673 (5th Cir. 2020),
*aff'd*, 596 U.S. 212 (2022) ...................................................................................14

*Doe v. Holy*,
557 F.3d 1066 (9th Cir. 2009) ..........................................................................4, 6

*Dougherty v. Barry*,
869 F.2d 605 (D.C. Cir. 1989) ...............................................................................15

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
654 F.3d 975 (9th Cir. 2011) .................................................................................9

*Fisk v. Bd. of Trustees of Cal. State Univ.*,
No. 22-cv-173 TWR (MSB), 2023 WL 2919317 (S.D. Cal. Apr. 12, 2023) ....................2, 14

*Fisk v. Bd. of Trustees of Cal. State Univ.*,
No. 22-cv-173 TWR (MSB), 2023 WL 6051381 (S.D. Cal. Sept. 15, 2023)....................9, 12

*Fisk v. Bd. of Trustees of Cal. State Univ.*,
No. 22-cv-173 TWR (MSB), 2023 WL 6585821 (S.D. Cal. Oct. 10, 2023)..........................15

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
503 U.S. 60 (1992).............................................................................................2, 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...............................................................................................11

*Grandson v. Univ. of Minn.*,
272 F.3d 568 (8th Cir. 2001) ............................................................................6, 13

*Hameed v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,
Loc. Union No. 396*,
637 F.2d 506 (8th Cir. 1980) ................................................................................15

*Horner v. Ky. High Sch. Athletic Ass'n*,
43 F.3d 265 (6th Cir. 1994) ..................................................................................17

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)...............................................................................................12

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
623 F.3d 1011 (9th Cir. 2010) ................................................................................8

*Mansourian v. Regents of Univ. of Cal.*,
602 F.3d 957 (9th Cir. 2010) ........................................................................6, 12, 13

*Mayerova v. E. Mich. Univ.,*
   No. 19-1177, 2019 U.S. App. LEXIS 9373 (6th Cir. Mar. 28, 2019) .....................................13

*McClain v. Lufkin Indus., Inc.,*
   519 F.3d 264 (5th Cir. 2008) .....................................................................................................15

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.,*
   311 F.R.D. 532 (N.D. Cal. 2015).................................................................................................9

*Ollier v. Sweetwater Union High Sch. Dist.,*
   768 F.3d 843 (9th Cir. 2014) ...................................................................................1, 5, 7, 17

*Ollier v. Sweetwater Union High Sch. Dist.,*
   858 F.Supp.2d 1093 (S.D. Cal. 2012).......................................................................................13

*Passantino v. Johnson & Johnson Consumer Prod., Inc.,*
   212 F.3d 493 (9th Cir. 2000) ....................................................................................................16

*Pederson v. La. State Univ.,*
   213 F.3d 858 (5th Cir. 2000) ...................................................................................................6, 9

*Portz v. St. Cloud State Univ.,*
   297 F.Supp.3d 929 (D. Minn. 2018) .........................................................................................13

*Portz v. St. Cloud State Univ.,*
   401 F.Supp.3d 834 (D. Minn. 2019),
   *aff'd in part, vacated in part, rev'd in part,* 16 F.4th 577 (8th Cir. 2021)..............................13

*Saban S. v. Kijakazi,*
   No. 20-cv-1549-SI, 2022 WL 843339 (D. Or. Mar. 22, 2022)..................................................11

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .................................................................................................3, 4

*Salter v. Quality Carriers, Inc.,*
   974 F.3d 959 (9th Cir. 2020) ..................................................................................................4, 6

*Savage v. Glendale Union High Sch.,*
   343 F.3d 1036 (9th Cir. 2003) .....................................................................................................4

*Sosna v. Iowa,*
   419 U.S. 393 (1975).....................................................................................................................8

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
   809 F.2d 626 (9th Cir. 1987) .......................................................................................................4

*Uzuegbunam v. Preczewski,*
   141 S.Ct. 792 (2021)...................................................................................................................15

PLS.' OPP. TO DEF.'S MOT. TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

*Whittum v. Univ. Med. Ctr. of S. Nev.*,
    No. 2:21-cv-01777-MMD-EJY, 2023 WL 2967306 (D. Nev. Apr. 17, 2023)........................6

*Working v. Lake Oswego Sch. Dist.*,
    No. 3:16-cv-00581-SB, 2017 WL 2954363 (D. Or. June 29, 2017),
    *report and rec. adopted*, 2017 WL 3083256 (D. Or. July 19, 2017).......................................5

**Statutes**

20 U.S.C. §§ 1681 et seq...........................................................................................................3

**Rules and Regulations**

34 C.F.R. § 106.37 .............................................................................................................3, 11

34 C.F.R. § 106.41(c)........................................................................................................3, 11

34 C.F.R. § 106.6(c)................................................................................................................17

44 Fed.Reg. 71415 ...................................................................................................................3

## INTRODUCTION

Without offering any supporting evidence, defendant University of Oregon ("UO") contends that this Court lacks subject matter jurisdiction to adjudicate substantial portions of plaintiffs' Title IX sex discrimination claims challenging UO's failure to provide equal treatment and benefits (Count I), and equal financial aid (Count II), to its female athletes. *See* ECF 27 ("Mot."). Defendant's motion is baseless and should be denied.[1]

UO contends that *some* of the 26 beach volleyball plaintiffs' claims for injunctive and declaratory relief in Counts I and II should be dismissed for lack of Article III standing and mootness. But it is black letter law that, in a class action like this, all it takes is one plaintiff with standing to confer subject matter jurisdiction on a court for claims seeking injunctive and declaratory relief. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014). UO does not dispute that at least *10* of the beach volleyball plaintiffs have such Article III standing. In fact, accepting the Complaint's allegations as true (as the Court must at this motion to dismiss stage), 14 of the 26 beach volleyball plaintiffs must be found to have Article III standing and live, non-moot claims for prospective equitable relief.[2]

Even if UO had submitted evidence in support of its Rule 12(b)(1) motion sufficient to establish that all 26 beach volleyball plaintiffs had graduated or were otherwise no longer enrolled (which it does not contend to be the case), plaintiffs' equitable relief claims would still

---

[1] UO does not dispute that this Court has jurisdiction over plaintiffs' claims challenging UO's failure to provide female students equal athletic participation opportunities (Count III).

[2] The remaining 12 beach volleyball plaintiffs seek damages only and do not personally seek injunctive or declaratory relief (because they were no longer students at UO when the case was filed). The fact that 12 of the 26 beach volleyball plaintiffs do not seek prospective equitable relief is immaterial to the Court's jurisdiction, though, because only one plaintiff with standing to seek such relief is needed to establish the requisite subject matter jurisdiction.

not be moot because of the well-established mootness exception for inherently transitory claims, which several courts have applied to Title IX athletic claims, as here. *Infra* pp. 8-9.

UO next argues that all 26 beach volleyball plaintiffs lack standing to pursue their *damages* claims in Count II, which challenge UO's discriminatory denial of equal financial aid to female athletes, based on the odd contention that the harms caused by UO's discrimination, once proven, cannot be "redressed" through compensatory damages. That argument is foreclosed by U.S. Supreme Court precedent holding that private plaintiffs may pursue compensatory damages to remedy intentional Title IX violations. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992). Unsurprisingly, given that binding precedent, the Southern District of California recently agreed that female athletes' Title IX unequal financial aid claims *are* redressable by compensatory damages. *Fisk v. Bd. of Trustees of Cal. State Univ.*, No. 22-cv-173 TWR (MSB), 2023 WL 2919317, at *12 (S.D. Cal. Apr. 12, 2023) ("*Fisk I*"). The same is true here.

The Court does not need to resolve at this early stage how damages should be allocated among plaintiffs and other class members once plaintiffs prevail on their unequal financial aid claims. That is a question that can be addressed later, at an appropriate stage. UO offers no authority supporting its radical position that an institution of higher learning covered by Title IX should be able to discriminate against female athletes by intentionally denying them millions of dollars in financial aid without any possible damages remedy. For all of these reasons, UO's motion to dismiss for lack of subject matter jurisdiction should be denied.

## BACKGROUND

Plaintiffs are 26 current and former University of Oregon varsity women's beach volleyball players and six current members of UO's club women's rowing team. They allege that UO's athletic program has been discriminating against women for years, in violation of Title IX

of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., and that this unlawful discrimination is ongoing. On behalf of proposed classes comprising similarly situated current, former, and future female students, plaintiffs seek to hold UO accountable for its discrimination, require UO to pay damages to the female athletes it has deprived and is depriving of equal treatment and benefits and equal athletic financial aid, and stop UO from violating Title IX in the future. ECF 1 ("Compl.") ¶3.

In Count I, the beach volleyball plaintiffs allege that UO discriminates against its female varsity athletes by providing them unequal treatment and benefits compared to the treatment and benefits UO provides to its male athletes. 34 C.F.R. § 106.41(c)(2)-(10); Compl. ¶¶352-58 (summarizing applicable regulations and guidance). In Count II, those same beach volleyball plaintiffs allege that UO discriminates against its female varsity athletes by failing to grant athletic financial aid "to members of each sex in proportion to the number of students of each sex participating in intercollegiate athletics." 34 C.F.R. § 106.37(c); 44 Fed.Reg. at 71415; Compl. ¶¶359-67. In Count III, the six rowing plaintiffs challenge UO's failure to provide female students equal athletic participation opportunities. 34 C.F.R. § 106.41(c)(1); Compl. ¶¶368-71.

UO does not dispute that the Court has jurisdiction over the rowing plaintiffs' claims in Count III. As we explain below, UO's attempts to dismiss all or substantial portions of Counts I and II for lack of jurisdiction are baseless.

## LEGAL STANDARD

UO chose not to submit any evidence in support of its Rule 12(b)(1) motion. The Court must therefore construe that motion as a "facial" challenge that "asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing such a motion, as in

reviewing a Rule 12(b)(6) motion to dismiss, the Court must deem all allegations in the Complaint to be true and draw all reasonable inferences in plaintiffs' favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

A defendant may only convert a motion to dismiss for lack of jurisdiction "into a factual motion *by presenting affidavits or other evidence* properly brought before the court" to "dispute[] the truth of the allegations [in the complaint] that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039 (emphasis added; quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). UO has not attempted to do so. In support of its motion, UO cites only the allegations in its unverified Answer. Those allegations are not evidence. *See, e.g.*, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment"). Thus, the standard for analyzing a facial jurisdictional challenge applies here. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1149 n.13 (9th Cir. 2024) ("Because Defendants did not produce evidence showing [one basis for its motion to dismiss for lack of jurisdiction], we review th[at] issue … under the rubric for a facial challenge to jurisdiction, *i.e.*, the Rule 12(b)(6) standard."); *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (district court erred in applying standard for reviewing factual challenge to jurisdiction where party challenging jurisdiction "did not offer any declaration or evidence that challenged the factual bases of [the other party's] plausible allegations").

## ARGUMENT

**I.  The Court has jurisdiction over the beach volleyball plaintiffs' classwide claims for declaratory and injunctive relief.**

UO asks the Court to dismiss 16 of the 26 beach volleyball plaintiffs' claims for declaratory and injunctive relief based on those plaintiffs' purported lack of standing and

mootness, asserting that they are no longer students at UO. Mot. at 1-2, 9-12. That argument fails for several reasons.

### A.  The beach volleyball plaintiffs have standing to seek classwide declaratory and injunctive relief.

In a Title IX class action (as in other actions), only one named plaintiff with standing is needed to confer jurisdiction on the court to adjudicate claims for declaratory and injunctive relief. *Ollier*, 768 F.3d at 865 ("'In a class action, standing is satisfied if at least one named plaintiff meets the requirements.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). UO does not dispute that at least 10 of the beach volleyball plaintiffs have standing to pursue injunctive and declaratory relief—and does not contend that any of those 10 plaintiffs' claims are moot. *See* Mot. at 9 n.3 (contending that only 16 of the 26 beach volleyball plaintiffs lack standing); *id.* at 12 nn.4 & 5 (contending that *the same* 16 plaintiffs' claims are moot). The 14 beach volleyball plaintiffs who were current students at the time the Complaint was filed all seek the same injunctive and declaratory relief in Counts I and II on behalf of classes comprising similarly situated current and future female athletes across UO. Compl. ¶¶576-77, Prayer ¶¶C, D. [3]

Because there is no dispute that at least 10 beach volleyball plaintiffs have standing and have live claims, the Court undisputedly has subject matter jurisdiction over those claims. Whether any other beach volleyball plaintiffs *also* have standing to seek that same classwide prospective relief is immaterial. *Cf. Working v. Lake Oswego Sch. Dist.*, No. 3:16-cv-00581-SB,

---

[3] Ten plaintiffs were current members of the 2023-24 varsity beach volleyball team when the Complaint was filed. Comp. ¶¶70-71 (Schroeder), ¶¶83-84 (Clark), ¶¶88-89 (Fields), ¶¶94-95 (George), ¶¶103-04 (Griffiths), ¶¶109-10 (McAllister), ¶¶120-21 (McCaskill), ¶¶128-29 (Plevin), ¶¶135-36 (Peterson), ¶¶147-48 (Folau). Four more were current students, former beach volleyball players, and could return to the beach volleyball team if UO stopped discriminating. Comp. ¶¶141-42, 146 (Tyus), ¶¶153-54 (Laita), ¶¶160-61 (Rotshtein), ¶¶170-71 (Almanza).

2017 WL 2954363, at *2 n.1, *3 (D. Or. June 29, 2017) (denying motion to dismiss Title IX

claims for lack of standing where plaintiffs included "members or former members" of school

sports teams; "At this juncture, the Court need not address whether students who have already

graduated lack standing."), *report and rec. adopted*, 2017 WL 3083256, at *1 (D. Or. July 19,

2017); *Whittum v. Univ. Med. Ctr. of S. Nev.*, No. 2:21-cv-01777-MMD-EJY, 2023 WL 2967306,

at *3 (D. Nev. Apr. 17, 2023) (granting motion to remand under Class Action Fairness Act after

considering and finding standing of just one plaintiff for each classwide claim).[4]

UO's unsupported assertions about which plaintiffs had graduated or had otherwise left

UO before the Complaint was filed are also inadequate to support its motion. The Complaint

alleges that 14 of the beach volleyball plaintiffs were currently enrolled when the Complaint was

filed, not just the 10 whose standing UO does not dispute. *See supra* n.3. Relying on the factual

allegations in its own Answer, UO contends that plaintiffs Plevin and Rotshtein had already

graduated when the Complaint was filed and that plaintiffs Almanza and Tyus were no longer

enrolled. Mot. at 9 n.3. But, at this stage, the Court must take the allegations in the Complaint

(not the unverified Answer) as true. *See Doe*, 557 F.3d at 1073; *Salter*, 974 F.3d at 964.[5]

---

[4] UO's cited cases (Mot. at 10-11) did not involve any (let alone multiple) plaintiffs with
undisputed standing to pursue live, non-moot claims for classwide prospective equitable relief. In
*Pederson v. La. State Univ.*, 213 F.3d 858, 870-72 (5th Cir. 2000), the court held that, although
plaintiffs who played club sports when the complaint was filed had standing to pursue claims
challenging their university's failure to provide equal athletic participation opportunities, they
did not have standing to pursue claims challenging the university's unequal treatment of female
varsity athletes, because none of them played a varsity sport. Similarly, in *Boucher v. Syracuse
Univ.*, 164 F.3d 113, 116 (2d Cir. 1999), "none of the named plaintiffs were varsity athletes." In
*Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001), *disagreed with on other grounds
by Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 969 (9th Cir. 2010), the four individual
plaintiffs had no remaining NCAA eligibility or did not play on a varsity team, and they failed to
file a class certification motion before the deadline for dispositive motions, leading the court to
strike their class allegations.

[5] Neither the 11 beach volleyball plaintiffs who had already graduated nor the one plaintiff
who had transferred to another school before the Complaint was filed seek prospective equitable

Even if UO had supported its motion with evidence confirming the allegations of its Answer, it could still not establish that those four plaintiffs were no longer enrolled when the Complaint was filed on December 1, 2023, because the Answer itself alleges that plaintiffs Plevin and Rotshtein graduated on December 9, 2023, which was *after* the Complaint was filed. ECF 16 ("Answer") ¶128 (Plevin), ¶161 (Rotshtein). UO's Answer also alleges that plaintiff Almanza "was last enrolled in 2023," and that plaintiff Tyus "was enrolled at the University in 2023" but was not "currently enrolled at the University" as of March 4, 2024. Answer ¶¶141, 170. Neither of those allegations supports UO's present assertion that these plaintiffs had left UO before the Complaint was filed.

### B. The beach volleyball plaintiffs' claims for classwide declaratory and injunctive relief are not moot.

UO's mootness argument fares no better. UO contends that 11 of the beach volleyball plaintiffs "have graduated from the University since the Complaint was filed" and that five others "are no longer enrolled"—referring to *the same* 16 plaintiffs who UO alleges lack standing. Mot. at 12. First, 12 of those 16 plaintiffs are the same 12 beach volleyball plaintiffs who the Complaint acknowledges had graduated or transferred to another school *before* the Complaint was filed, and who have never sought prospective relief. *See supra* n.5; Mot. at 12 nn.4 & 5 (Cole, LaFollette, Siegrist, Haden, Wallace, Hopen, Lopez, Wetton, Lima, Bernal, Donovan, Thomas).

---

relief. Compl. ¶¶184-85 (Wetton), ¶¶192-93 (Lopez), ¶¶197-98 (Hopen), ¶¶206-07 (Wallace), ¶¶213-24 (Siegrist), ¶¶221-22 (Lima), ¶¶234-35 (LaFollette), ¶¶241-42 (Haden), ¶¶247-48 (Cole), ¶¶262-63 (Thomas), ¶¶271-72 (Donovan), ¶279 (Bernal). The point has no practical relevance, though, because the 14 *other* beach volleyball plaintiffs *do* seek such relief on behalf of the proposed classes, and only one plaintiff with standing is required to establish jurisdiction. *Ollier*, 768 F.3d at 865; *Bates*, 511 F.3d at 985.

UO contends that four other plaintiffs graduated or left the university after the Complaint was filed. Mot. at 12 nn.4 & 5 (Plevin, Rotshtein, Almanza, Tyus). But again, UO relies only on its own unverified Answer and offers no evidence to support its factual assertions. Taking the allegations in the Complaint as true, as the Court must, none of these plaintiffs' claims have become moot.

Even if UO could establish that some of the beach volleyball plaintiffs *had* left the university after the Complaint was filed, it would still be improper for the Court to dismiss their claims for injunctive and declaratory relief, because those claims would "fall[] within an exception to mootness" for inherently transitory claims. *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020). "In the class action context, a 'controversy may exist ... between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.'" *Id.* (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)). That exception to mootness applies "to situations where, as here, the district court has not ruled on class certification," where "(1) the duration of the challenged action is too short to allow full litigation before it ceases, … and (2) there is a reasonable expectation that the named plaintiffs could themselves suffer repeated harm *or* it is certain that other persons similarly situated will have the same complaint …." *Id.* (citations and internal quotation marks omitted; emphasis added).

Plaintiffs' claims satisfy both conditions. Plaintiffs who were varsity athletes when the Complaint was filed in the middle of the 2023-24 academic year generally would graduate within six months to three-and-a-half years, and the Ninth Circuit has recognized that "three years is 'too short'" to allow for full litigation. *Id.* (quoting *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010)). Further, because UO continues to provide unequal

treatment and benefits, and unequal financial aid, to its female athletes, other female athletes in the proposed classes will continue to have the same claims for as long as this wrongful conduct continues. *See id.*

District courts in this circuit and elsewhere have repeatedly held that the exception to mootness for "inherently transitory" claims applies to Title IX claims seeking injunctive and declaratory relief on behalf of a class of students, like those at issue here, because of the "necessarily finite duration" of each student's "time as a student-athlete, and the potential for repetition of the claims from similarly situated students." *A.B. by C.B. v. Haw. State Dep't of Educ.*, 334 F.R.D. 600, 605 (D. Haw. 2019), *rev'd on other grounds*, 30 F.4th 828 (9th Cir. 2022); *see Fisk v. Bd. of Trustees of Cal. State Univ.*, No. 22-cv-173 TWR (MSB), 2023 WL 6051381, at *12 (S.D. Cal. Sept. 15, 2023) ("*Fisk II*") ("[G]iven the finite duration of a college student's time as a student-athlete, the complex standing issues the Court has had to resolve in this case, and the pace of this litigation thus far, the Court finds that the inherently transitory exception to mootness applies to this putative class action."); *Beasley v. Ala. State Univ.*, 966 F.Supp. 1117, 1127 (M.D. Ala. 1997) ("*Beasley I*"); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 538 (N.D. Cal. 2015) (claims by students challenging NCAA restrictions satisfied inherently transitory exception to mootness for similar reasons). The same basic reasoning would apply here, *if* UO had presented evidence that any of the beach volleyball plaintiffs had graduated or otherwise left UO (which it failed to do).[6]

---

[6] One of UO's own cited cases reinforces the point. *See Pederson*, 213 F.3d at 874 (named plaintiffs' graduations did not make Title IX claims for injunctive relief "moot as to the putative class"). UO's other cited cases (Mot. at 11) did not involve claims for classwide relief and thus did not address the inherently transitory exception to mootness. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) (claims for injunctive relief of three individual high school students challenging rules that applied to their graduation speeches on First Amendment grounds were moot because they had graduated); *C.F. ex rel. Farnan v. Capistrano*

## II.    The beach volleyball plaintiffs have standing to pursue damages to remedy UO's discriminatory unequal provision of athletic financial aid.

UO next contends that the beach volleyball plaintiffs' "equal treatment and athletic financial assistance claims alleged in Counts I and II must be dismissed on standing grounds because they cannot be redressed through money damages." Mot. at 1. That argument, too, fails for multiple reasons.

First, as noted above, UO does not dispute that several beach volleyball plaintiffs have standing to pursue their live, non-moot claims for injunctive and declaratory relief under Count I (unequal treatment and benefits) and Count II (unequal financial assistance). *Supra* p. 5. Thus, even if damages were not available (which they are), there would be no grounds for the Court to dismiss those counts in their entirety.

Second, UO's motion does not include any argument that monetary damages are unavailable to redress plaintiffs' Count I unequal treatment and benefits claims. Rather, its damages argument focuses exclusively on Count II, the beach volleyball plaintiffs' unequal financial aid claim. *See* Mot. at 5-9 (arguing only that plaintiffs' "financial aid claim fails for want of redressability"). UO thus has waived any argument for dismissing plaintiffs' Count I damages claims for unequal treatment and benefits, which seek compensatory relief for UO's discriminatory unequal treatment of plaintiffs and other female athletes in its provision of equipment, uniforms, and supplies; scheduling of games and practice times; travel, transportation, and per diem allowance; opportunities to receive coaching and academic tutoring; provision of locker rooms, practice, and competitive facilities; provision of medical and training

---

*Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011) (claim for declaratory relief of individual high school student who contended that teacher violated his rights under the Establishment Clause by making comments during class that were hostile to religion were moot because student had graduated).

services; provision of housing and dining facilities and services; administrative support; recruiting resources and support; Name, Image, Likeness support; and other resources and benefits. 34 C.F.R. § 106.41(c); Compl. ¶¶352-58, 367-531, 595-603; *see Saban S. v. Kijakazi*, No. 20-cv-1549-SI, 2022 WL 843339, at *7 (D. Or. Mar. 22, 2022) ("'Issues raised in a brief which are not supported by argument are deemed abandoned.'") (quoting *Acosta–Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992)).

Third, as we explain below, UO's narrow argument that plaintiffs "cannot seek compensatory damages for a financial aid claim," Mot. at 5, is wrong and directly conflicts with binding Supreme Court precedent.

Count II alleges that UO discriminated against the beach volleyball plaintiffs and similarly situated female athletes by failing to provide athletic financial aid to female and male athletes in proportion to the number of students of each sex participating in intercollegiate athletics. 34 C.F.R. § 106.37; Compl. ¶¶359-67, 532-48, 604-10. To establish standing to pursue that Count, plaintiffs must allege that they have suffered an (1) injury, (2) that is "fairly traceable" to defendant's action, (3) and is "likely" to be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). UO challenges only the "redressability" prong of the standing inquiry. Mot. at 5.

UO does not dispute that the beach volleyball plaintiffs have alleged they were injured by UO's discriminatory failure to provide athletic financial aid to female varsity athletes in proportion to their athletic participation rate. *See* Mot. at 5. Nor could it, as the Complaint expressly alleges that each beach volleyball plaintiff was harmed by UO's discriminatory conduct in at least four ways:

- She was denied the *opportunity* to compete for and receive equal athletic financial aid because of her sex;

- She was forced to confront a sex-based *barrier* to receiving athletic financial aid that male varsity athletes did not confront and that made it more difficult for her to receive financial aid than it was for male varsity athletes;

- She received *a smaller financial aid award*, simply because of her sex;

- She suffered the dignitary harm of being forced to endure *degrading and stigmatizing second-class treatment* as UO intentionally treated her and other female varsity athletes worse than male varsity athletes when it came to athletic financial aid.

Compl. ¶62; *see also id.* ¶¶33-61. The Southern District of California recently held that female athletes had standing to pursue unequal financial aid claims for damages based on similar allegations. *See Fisk II*, 2023 WL 6051381, at *7-8.

UO nonetheless contends that plaintiffs cannot demonstrate "redressability" for their injuries, on the mistaken theory that a violation of Title IX's equal financial aid requirement can never, as a matter of law, be remedied by monetary damages. UO cites no authority for that radical proposition, and with good reason—there is none. To the contrary, the Supreme Court has squarely held that "a damages remedy is available for an action brought to enforce Title IX" alleging an "intentional violation." *Franklin*, 503 U.S. at 75-76 & n.8. The Ninth Circuit has further recognized that "[u]niversities' decisions with respect to athletics are … 'always—by definition—intentional.'" *Mansourian*, 602 F.3d at 968 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)). Thus, under binding Supreme Court and Ninth Circuit precedent, damages are an available remedy in a Title IX action that challenges a university's discriminatory unequal provision of athletic financial aid, as here. *See, e.g., Beasley v. Ala. State*

*Univ.*, 3 F.Supp.2d 1304, 1307 (M.D. Ala. 1998) ("*Beasley II*") (sovereign immunity did not bar Title IX unequal financial aid damages claim).[7]

UO asserts that plaintiffs cannot pursue damages based on its failure to provide proportionate financial aid to female athletes because Title IX does not provide an individual right to receive a scholarship. Mot. at 6 (citing *Beasley I*, 966 F.Supp. at 1126). But plaintiffs are not seeking retroactive individual scholarship awards. They are seeking damages to compensate them for UO's past violations of their legal rights. *See Beasley I*, 966 F.Supp. at 1126 (denying motion to dismiss unequal athletic financial aid claim; standing was based on "overall disproportionate provision of support funds to athletes of each gender" that caused individual injury to plaintiff). It makes no difference to plaintiffs' damages claims which class members might hypothetically have been awarded a scholarship had UO not engaged in proscribed discrimination. Each plaintiff alleged that she was injured as a result of UO's discriminatory allocation of athletic financial aid between male and female athletes. *Supra* p. 12. Plaintiffs are entitled to seek compensatory damages to redress those injuries.

The Court can find that an award of damages would potentially redress plaintiffs' injuries without conclusively resolving at this early stage of the proceedings the various ways damages

---

[7] UO's cited cases neither rejected any Title IX plaintiff's claim for damages nor even addressed such a claim. *See* Mot. at 5-6 (citing *Balow v. Mich. State Univ.*, 24 F.4th 1051 (6th Cir. 2022) (appeal of denial of preliminary injunction); *Mayerova v. E. Mich. Univ.*, No. 19-1177, 2019 U.S. App. LEXIS 9373 (6th Cir. Mar. 28, 2019) (staying preliminary injunction pending appeal); *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F.Supp.2d 1093, 1097 (S.D. Cal. 2012) (plaintiffs did not seek damages, and did not pursue any unequal financial aid claim); *Portz v. St. Cloud State Univ.*, 401 F.Supp.3d 834, 870 (D. Minn. 2019), *aff'd in part, vacated in part, rev'd in part*, 16 F.4th 577 (8th Cir. 2021) (considering only claims for injunctive relief)). In a previous order, the court in *Portz* had dismissed the plaintiffs' damages claims for lack of prior "notice," *Portz v. St. Cloud State Univ.*, 297 F.Supp.3d 929, 940-42 (D. Minn. 2018), but the Ninth Circuit expressly rejected the Eighth Circuit "notice" requirement, on which the *Portz* court relied, in *Mansourian*, 602 F.3d at 969 (disagreeing with *Grandson,* 272 F.3d at 575).

could permissibly be calculated or apportioned among plaintiffs and the class if plaintiffs prevail. That is all that is necessary for standing. *See, e.g.*, *Fisk I*, 2023 WL 2919317, at *12 ("The Court has the power to award compensatory damages by awarding damages that put Plaintiffs in as good of a position as they would have been had SDSU provided proportional pools of athletic financial aid to men and women, thereby affording the female student-athletes the opportunity to compete for a proportional pool of money. Such relief, if proven by Plaintiffs, would sufficiently redress Plaintiffs' injury."); *see also Cummings v. Premier Rehab, P.L.L.C.*, No. 4:18-cv-649-A, 2019 WL 227411, at *3 (N.D. Tex. Jan. 16, 2019) (holding that plaintiffs had standing to seek damages as redress for emotional harms, even if statute did not permit emotional distress damages), *aff'd*, 948 F.3d 673 (5th Cir. 2020), *aff'd*, 596 U.S. 212 (2022).[8]

In any event, no legal or conceptual barrier forecloses an award or allocation of damages here. UO notes that, when plaintiffs seek injunctive and declaratory relief for ongoing Title IX violations, "a school may be 'entitled to determine its own method for achieving statutory compliance'" *going forward*, so long as the school's chosen method complies with the statute. *Balow v. Mich. State Univ.*, 24 F.4th 1051, 1061 (6th Cir. 2022); Mot. at 6. But that says nothing about the available remedies for *past* violations.

---

[8] Plaintiffs are not seeking emotional distress damages, only compensatory damages to compensate them for UO's (1) denial of equal opportunity to compete for and receive financial aid, (2) imposition of a sex-based barrier to receiving financial aid, (3) provision of less financial aid than each plaintiff should have received, and (4) imposition of degrading and stigmatizing second-class treatment on each plaintiff. Compl. ¶62. The Supreme Court has made abundantly clear that "private plaintiffs may secure … monetary relief in … suits" alleging violations of "statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected characteristics," like Title IX. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022). That available monetary relief includes "compensatory damages." *Id.* at 221 (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)).

PLS.' OPP. TO DEF.'S MOT. TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In analogous contexts, where a defendant unlawfully denies a class of people an equal opportunity to compete for limited benefits, courts recognize that damages may be awarded to all affected class members, without requiring plaintiffs to prove which individual members would have received which benefits had the defendant not unlawfully discriminated. For example, where plaintiffs bring a Title VII claim challenging an employer's discriminatory failure to provide equal opportunities for promotion, "[t]he accepted way to apportion damages among a class of plaintiffs who outnumber the lost promotion spots is to compute the total additional wages attributable each year to each promotion and divide the value among the class members." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 281 (5th Cir. 2008); *see Dougherty v. Barry*, 869 F.2d 605, 614-15 (D.C. Cir. 1989) (Ginsburg, J.) (citing cases); *Hameed v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Loc. Union No. 396*, 637 F.2d 506, 520 (8th Cir. 1980).

These cases suggest one among many possible ways to allocate damages in a case like this, e.g., the beach volleyball plaintiffs and members of the proposed class could seek damages equivalent to the total athletic financial aid dollars that class members were illegally deprived, and those total damages could then be divided among all class members to redress the injuries they all suffered from UO's unlawful denial of equal opportunities to compete for financial aid. *See, e.g.,* Compl. ¶67.

Although the Court need not go further, UO's motion could also be denied for yet another reason: plaintiffs seek not only "compensatory damages," but also "nominal damages, and other monetary relief permitted by law." Compl. Prayer ¶E. The request for nominal damages itself demonstrates "redressability sufficient to survive past the pleading stage." *Fisk v. Bd. of Trustees of Cal. State Univ.*, No. 22-cv-173 TWR (MSB), 2023 WL 6585821, at *5 (S.D. Cal. Oct. 10, 2023) ("*Fisk III*"); *see Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 802 (2021) ("[A] request for

nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("A live claim for nominal damages will prevent dismissal for mootness.") (citation omitted). UO makes no argument to the contrary.

UO argues in the alternative that, if the Court recognizes (as it should) that plaintiffs may seek compensatory damages for UO's discriminatory denial of equal financial aid to its female athletes, "the Court should limit the amount of damages available for Plaintiffs to recover to the six scholarships allowed by the NCAA for the sport." Mot. at 7. There is no legal basis for imposing such a limitation, especially at this threshold stage.

First, UO's contention is not an argument about the Court's subject matter *jurisdiction*, and thus is not properly resolved in this Rule 12(b)(1) motion. As explained above, the precise contours and allocation of the damages award that plaintiffs and the class may ultimately recover present merits issues to be resolved based on evidence, at summary judgment or trial. *See, e.g.*, *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 510 (9th Cir. 2000) (affirming district court's allocation of damages after jury verdict and rejecting argument that Title VII damages cap limited that allocation).

Second, UO's argument is meritless. The NCAA's scholarship rules are irrelevant to the damages plaintiffs may recover as relief for UO's discriminatory conduct. As explained above, plaintiffs are not seeking the retroactive award of NCAA scholarships. They are seeking compensatory damages to remedy the injuries UO inflicted on them by discriminating against them and all female athletes in violation of Title IX. Ordering UO to pay compensatory damages to the injured class to fully remedy its past discriminatory conduct would not violate any NCAA rule. Even if it did, the NCAA rules would be irrelevant because "compliance [with Title IX] 'is

not obviated or alleviated by any rule or regulation of any organization, club, athletic or other league, or association.'" *Ollier*, 768 F.3d at 858 (quoting 34 C.F.R. § 106.6(c)); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 274 n.7 (6th Cir. 1994).

## CONCLUSION

For all these reasons, UO's motion to dismiss for lack of jurisdiction should be denied.

Dated: November 7, 2024                 Respectfully Submitted,

                                         */s/Jennifer J. Middleton*

                                         Jennifer J. Middleton (OSB No. 071510)
                                         jmiddleton@justicelawyers.com
                                         **JOHNSON JOHNSON LUCAS &**
                                         **MIDDLETON PC**
                                         975 Oak St., Ste. 1050
                                         Eugene, OR 97401-3124
                                         Tel: 541-484-2434

                                         Michael Rubin (*pro hac vice*)
                                         Eve H. Cervantez (*pro hac vice*)
                                         Matthew J. Murray (*pro hac vice*)
                                         mrubin@altb.com
                                         ecervantez@altber.com
                                         mmurray@altber.com
                                         **ALTSHULER BERZON LLP**
                                         177 Post St., Ste. 300
                                         San Francisco, CA 94108-4733
                                         Tel: 415-421-7151

                                         Arthur H. Bryant (*pro hac vice*)
                                         abryant@clarksonlawfirm.com
                                         **CLARKSON LAW FIRM, P.C.**
                                         95 3rd St., 2nd Floor
                                         San Francisco, CA 94103-3103
                                         Tel: 213-788-4050

                                         Carey Alexander (*pro hac vice*)
                                         calexander@clarksonlawfirm.com
                                         **CLARKSON LAW FIRM, P.C.**
                                         590 Madison Ave., 21st Floor
                                         New York, NY 10022-8553
                                         Tel: 646-290-6009

Neda Saghafi (*pro hac vice*)
nsaghafi@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy.
Malibu, CA 90265-5810
Tel: (213) 788-4050

*Attorneys for Plaintiffs and the Proposed Classes*

PLS.' OPP. TO DEF.'S MOT. TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION