Jennifer J. Middleton (OSB No. 071510)
jmiddleton@justicelawyers.com
**JOHNSON JOHNSON LUCAS &
MIDDLETON PC**
975 Oak St., Ste. 1050
Eugene, OR 97401-3124
Tel: 541-484-2434

Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050

Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
mrubin@altb.com
ecervantez@altber.com
mmurray@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151

[Additional counsel listed in signature block]

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF OREGON,<br><br>        Defendant. | Case No.  6:23-cv-01806-MC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS (ECF 25)**<br><br>Request for Oral Argument |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ........................................................................................................................... 5

    I.  Controlling precedent precludes UO's argument for a one-year statute of limitations........ 5

        A.  Applying current Ninth Circuit precedent would impose a two-year statute of limitations on plaintiffs' Title IX claims ................................................................. 5

        B.  Applying intervening U.S. Supreme Court precedent would require borrowing Oregon's six-year statute of limitations for contract claims .................................. 8

    II. All plaintiffs' claims are timely .......................................................................................... 9

        A.  UO commits separate and discrete Title IX violations each year, resetting the statute of limitations............................................................................................. 10

        B.  When plaintiffs knew or should have known of potential Title IX violations is a disputed question of material fact ................................................................... 13

CONCLUSION...................................................................................................................... 18

PLS.' OPP. TO DEF.'S MOT. FOR SUM. JUDG. ON STATUTE OF LIMITATIONS GROUNDS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bougher v. Univ. of Pittsburgh,*
   882 F.2d 74 (3d Cir. 1989)..................................................................................7

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)..........................................................................................5

*Cole v. Mont. Univ. System,*
   CV-21-88-M-BMM, 2023 WL 6992812 (D. Mont. Oct. 23, 2023) .......................14

*Cummings v. Premier Rehab Keller, PLLC,*
   596 U.S. 212 (2022)....................................................................................1, 3, 8

*Emrich v. Touche Ross & Co.,*
   846 F.2d 1190 (9th Cir. 1988) .....................................................................16, 17

*Felder v. Casey,*
   487 U.S. 131 (1988)......................................................................................6, 7

*Fisk v. Bd. of Trustees of Cal. State Univ.,*
   No. 22-cv-173 TWR (MSB), 2022 WL 16577871 (S.D. Cal. Nov. 1, 2022).........18

*Flynt v. Shimazu,*
   940 F.3d 457 (9th Cir. 2019) ...........................................................................17

*Franklin v. Gwinnett Cnty. Pub. Schs.,*
   503 U.S. 60 (1992)...........................................................................................8

*Galen v. Cnty. of Los Angeles,*
   477 F.3d 652 (2007).........................................................................................5

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998).........................................................................................8

*Hoesterey v. City of Cathedral City,*
   945 F.2d 317 (9th Cir. 1991) ...........................................................................13

*Htaike v. Sein,*
   269 Or. App. 284 (2015)..................................................................................17

*Johnson v. Multnomah Cnty. Dept. of Cmty. Just.,*
   344 Or. 111 (2008)..........................................................................................16

*Mansourian v. Regents of Univ. of Cal.*,
    602 F.3d 957 (9th Cir. 2010) ...........................................................11, 12, 13

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002).........................................................................10

*Pouncil v. Tilton*,
    704 F.3d 568 (9th Cir. 2012) .............................................................11

*Samuelson v. Or. State Univ.*,
    162 F.Supp.3d 1123 (D. Or. 2016) ......................................................5

*Stanley v. Trustees of Cal. State Univ.*,
    433 F.3d 1129 (9th Cir. 2006) ................................................... *passim*

*Tolan v. Cotton*,
    572 U.S. 650 (2014)...........................................................................5

## Statutes

20 U.S.C. § 1092(g) ...........................................................................12

20 U.S.C. §§ 1681 et seq........................................................................1

Cal. Gov. Code §§ 910 et seq. ..............................................................6

Cal. Gov. Code § 945.6.......................................................................6, 7

ORS § 12.080 ....................................................................................9

ORS § 12.110(1) ..............................................................................5, 9

ORS § 659.850................................................................................5, 7

ORS § 659.860.............................................................................5, 6, 7

## Rules and Regulations

34 C.F.R. § 106.37(c)..................................................................4, 15, 16

34 C.F.R. § 106.41(c)....................................................................4, 14

44 Fed.Reg. 71413 ...........................................................................14

44 Fed.Reg. 71415 .............................................................................4

Fed. R. Civ. P. 56(a) ...........................................................................4

## INTRODUCTION

For years, Defendant University of Oregon ("UO") has failed to live up to the commitment it made to the federal government and to its student body every time it accepted federal funds: the commitment under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., to provide athletic treatment and benefits, financial aid, and participation opportunities to female students that are equal to the unparalleled athletic treatment and benefits, financial aid, and participation opportunities that it provides to male students. Plaintiffs, 26 members of UO's women's varsity beach volleyball team and six female members of its club rowing team, seek to hold UO accountable for this breach of its statutory obligations and to ensure that women receive equal athletic treatment and benefits, financial aid, and participation opportunities going forward.

Without any supporting evidence, UO seeks summary judgment in its favor because, it argues, "the vast majority" of plaintiffs' claims are time-barred, based solely on the allegations in the Complaint. ECF 25 ("Mot.") at 1. UO's argument rests on the erroneous premise that this Court should break with controlling Ninth Circuit precedent by adopting a one-year statute of limitations for Title IX claims in Oregon, rather than following longstanding Ninth Circuit law that applies Oregon's two-year personal injury limitations period to Title IX claims. The Ninth Circuit has rejected such arguments in the past. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1134-36 (9th Cir. 2006). This Court should reject them here.

Further, despite those previous Ninth Circuit rulings, the U.S. Supreme Court's 2022 decision in *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022), which analogized damages claims arising under Spending Clause legislation (like Title IX) to breach-of-contract claims, compels application of a different statute of limitations to plaintiffs' Title IX claims:

Oregon's six-year limitations period for contract claims. Although the Court need not reach that issue to deny UO's motion for summary judgment, plaintiffs urge the Court (once the issue becomes ripe for decision) to apply that six-year limitations period in this case.

UO also contends that the statute of limitations (whatever it may be) starts to run on all of each plaintiff and class member's claims from the moment that student sets foot on campus as a member of a female sports team, even with respect to Title IX violations suffered by that student later in her UO career *after* the start of that limitations period, and even with respect to violations that are *currently ongoing*.

That argument fails for two independent reasons. First, it ignores that each academic year UO makes a new set of decisions allocating athletic resources, financial aid, and varsity playing opportunities, which cause new Title IX violations each year. Consequently, even if a plaintiff's or class member's Title IX claims during her freshman year might theoretically be precluded by the statute of limitations, that would not mean her separate Title IX claims arising during her sophomore, junior, and senior years would be precluded, if those violations occurred after the start of the limitations period.

Second, UO's argument—which links the start of each plaintiff's limitations period to the first day she enrolled at UO and joined a female sports team (which are not necessarily the same date)—ignores that Title IX's limitations period does not begin to run until the plaintiff had reasonable notice of the violation. Merely joining a women's sports team—even a team that seems to have been given inadequate resources—is not enough to put the new team member on notice that the university is committing program-wide Title IX violations. Notice of a potential Title IX claim requires the prospective plaintiff to have detailed information about her

university's treatment of athletes university-wide. UO offers no evidence that all plaintiffs acquired that information when they first set foot on campus, nor could it.

For plaintiffs' Count I unequal treatment and benefits claims, UO has provided no evidence when any plaintiff or class member knew or should have known that the poor treatment they experienced was part of a larger pattern of discriminatory treatment and benefits (i.e., in which female participants in UO's athletic program *as a whole* received fewer recruiting and coaching dollars, less publicity and "name, image, and likeness" support, and substantially inferior benefits in myriad other categories). Indeed, plaintiffs' accompanying declarations demonstrate that they did not acquire the information necessary to provide notice during the 2019-20 and 2020-21 school years because they were prohibited from socializing, going to class, or training with students on any other sports teams due to the COVID pandemic. *See* Declarations of Ashley Schroeder and Josie Cole, filed herewith. Moreover, financial data suggesting a violation was not available until the annual publication of the University's spending on its male and female athletic programs, including in various categories of treatment and benefits, which generally happens more than *half a year after* the academic year ends. *See* Declaration of Jennifer Middleton, filed herewith.

For plaintiffs' Count II unequal financial aid claims, that financial information, which included the amounts of overall athletic financial aid UO provided to male and female athletes, was similarly essential and unavailable. *Id.* As to plaintiffs' Count III claims challenging UO's failure to provide equal athletic participation opportunities, the statute of limitations cannot be a bar because plaintiffs are challenging *ongoing* discrimination and are seeking *prospective* relief. Finally, and at the very least, the question of when plaintiffs should have had notice triggering

the statute of limitations on any of their three claims is a disputed question of fact, barring summary judgment.

For these reasons, as further detailed below, UO's motion for summary judgment is meritless and should be denied.

## BACKGROUND

Plaintiffs allege that UO has been discriminating against its female athletes and potential athletes for years in violation of Title IX, and that this unlawful discrimination is ongoing. On behalf of proposed classes comprising similarly situated current, former, and future female students, plaintiffs seek to hold UO accountable for its discrimination, to make UO pay damages to the female athletes it has deprived and is depriving of equal treatment and benefits and equal athletic financial aid, and to stop UO from violating Title IX in the future. ECF 1 ("Compl.") ¶3.

In Count I, the beach volleyball plaintiffs allege that UO discriminates against its female varsity athletes by providing them unequal treatment and benefits compared to the treatment and benefits that it provides to male athletes. 34 C.F.R. § 106.41(c)(2)-(10); Compl. ¶¶352-58 (summarizing applicable regulations and guidance). In Count II, those same beach volleyball plaintiffs allege that UO discriminates against its female varsity athletes by failing to grant athletic financial aid to "members of each sex in proportion to the number of students of each sex participating in intercollegiate athletics." 34 C.F.R. § 106.37(c); 44 Fed.Reg. at 71415; Compl. ¶¶359-67. In Count III, the six rowing team plaintiffs challenge UO's failure to provide female students equal athletic participation opportunities. 34 C.F.R. § 106.41(c)(1); Compl. ¶¶368-71.

## LEGAL STANDARD

Summary judgment may only be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). UO's burden,

as the moving party, is to establish the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If UO could meet that burden, plaintiffs, as the nonmoving parties, would be required to make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the necessary elements of their case. *Galen v. Cnty. of Los Angeles,* 477 F.3d 652, 658 (2007). "The evidence of the nonmovant [plaintiffs] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

## ARGUMENT

I.    **Controlling precedent precludes UO's argument for a one-year statute of limitations.**

A.    **Applying current Ninth Circuit precedent would impose a two-year statute of limitations on plaintiffs' Title IX claims.**

Because Title IX does not have an express statute of limitations, courts must "borrow the most appropriate state statute of limitations" period. *Stanley*, 433 F.3d at 1134 (citation omitted). In *Stanley*, the Ninth Circuit held that the appropriate statute of limitations for Title IX claims is the state limitations period for personal injury claims. *Id.* at 1135-36 ("Therefore, we join every other federal circuit to consider this issue and hold that Title IX claims are subject to the applicable state statute of limitations for personal injury actions."). This Court has followed that ruling in at least one previous Title IX action against a public university, applying Oregon's two-year personal injury statute of limitations. *Samuelson v. Or. State Univ.,* 162 F.Supp.3d 1123, 1134 (D. Or. 2016) (holding that "Title IX claims use the state's personal injury statute of limitations," which in Oregon is two years); ORS § 12.110(1).

Despite acknowledging this precedent, UO argues that the one-year limitations period of ORS §§ 659.850-860 should apply instead. That statute, which bars discrimination in education

funded by the State, imposes several preconditions to suit, e.g., requiring the plaintiff to have

filed an internal grievance within 180 days of the alleged discrimination and at least 90 days

before suing and the defendant educational entity to have failed to make a final determination

with respect to that grievance—in which case the suit must be filed within one year of the filing

of the grievance. ORS § 659.860(4), (5).[1] The Ninth Circuit and other federal courts have been

clear, though, that Title IX cannot borrow state law statutes of limitations that, like § ORS

659.860, depend on timelines triggered by ancillary procedures and exhaustion requirements.

*See, e.g.*, *Stanley*, 433 F.3d 1129; *Felder v. Casey*, 487 U.S. 131 (1988).

In *Stanley*, the plaintiff argued that her Title IX claim should be governed by Cal. Gov.

Code § 945.6, which specifies the limitations periods applicable to claims against public entities

under California state law, but requires plaintiffs to have first submitted a notice of their claim to

the public entity defendant. *See generally* Cal. Gov. Code §§ 910 et seq. The start and length of

the limitations period for a civil claim then varies, depending in part on when and how the state

entity responds. *See id.* § 945.6(a)(1)-(2).

In rejecting Stanley's argument that the limitations period of Cal. Gov. Code § 945.6

should apply to her Title IX claim (and instead adopting California's limitations period for

personal injury claims), the Ninth Circuit noted that "state claim presentment requirement[s]" are

likely inapplicable to any federal civil rights action, because

> [a] state law that conditions that right of recovery upon compliance with a rule
> designed to minimize governmental liability, and that directs injured persons to
> seek redress in the first instance from the very targets of the federal legislation, is
> inconsistent in both purpose and effect with the remedial objectives of the federal
> civil rights law.

---

[1] If the educational entity made such a determination, the plaintiff cannot file a de novo
discrimination claim in court at all, but may only appeal that determination through the
procedure and under the deferential review standards of Oregon's Administrative Procedure Act.
ORS § 659.860(5).

*Stanley*, 433 F.3d at 1135 (quoting *Felder,* 487 U.S. at 153). To apply Cal. Gov. Code § 945.6, the Court said, would cause the statute of limitations period applicable to a Title IX claim to "vary based on the state's response to a requirement that does not apply" under Title IX—a result the Ninth Circuit concluded would be illogical and in "sharp opposition" to federal interests in uniformity and certainty. *Id*. at 1135.

Likewise, in *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989)—a case the Ninth Circuit cited with favor in *Stanley*, 433 F.3d at 1134—the Third Circuit rejected the defendant's contention that federal courts should look to the Pennsylvania Education Act or the Pennsylvania Human Relations Act for the statute of limitations applicable to a Title IX claim. Because both of those statutes "provide for administrative proceedings," they were "not the proper periods to borrow." *Bougher*, 882 F.2d at 77-78.

Like the state statutes rejected in *Stanley* and *Bougher*, claims under ORS § 659.850 require administrative exhaustion, meaning the statute "directs injured persons to seek redress in the first instance from the very targets of the federal legislation." *Stanley,* 433 F.3d at 1135. A plaintiff who wishes to bring a state law discrimination claim against a State-funded educational entity in Oregon must first file a grievance within 180 days; any civil action must be filed within one year of the grievance (but not until 90 days after filing the grievance, unless only injunctive relief is sought); and a civil action may not be filed in court at all if the educational entity has made a final determination on the grievance. ORS § 659.860. This system is clearly inconsistent with the remedial purpose of Title IX. Under *Stanley* and *Bougher*, ORS § 659.860 does not provide the appropriate limitations period for a Title IX action.

**B.  Applying intervening U.S. Supreme Court precedent would require borrowing Oregon's six-year statute of limitations for contract claims.**

Recent U.S. Supreme Court precedent involving Spending Clause legislation suggests that a longer limitations period should apply to Title IX claims than the two-year personal injury statute of limitations required by *Stanley*. The court in *Stanley* made clear that courts should determine which is the "appropriate" state statute of limitations to borrow based on "the nature of the harm alleged." 433 F.3d at 1134-35. Sixteen years later, the U.S. Supreme Court decided *Cummings*, 596 U.S. 212, which clarified that the harm redressed through a private right of action under Spending Clause legislation is a breach-of-contract-type harm.

*Cummings* involved claims under the Rehabilitation Act, which, like Title IX of the Education Amendments of 1972 and Title VI of the Civil Rights Act of 1964, is legislation adopted under the U.S. Constitution's Spending Clause. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 64 (1992) ("Title IX was enacted under Congress' Spending Clause powers...."). *Cummings* built on several prior decisions reasoning that private rights of action under Spending Clause legislation were a species of contract claim. *See Cummings,* 596 U.S. at 219 ("Spending Clause statutes operate by conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.") (internal citations omitted). Treating the claims as contract claims, the Court limited the damages remedies available to those traditionally generally available in contract actions. *Id*.

Applying the reasoning of *Cummings* to this Title IX action demonstrates that the "nature of the harm alleged" in a Title IX case is a broken contractual promise: UO violated the commitment it made when it accepted federal funds not to discriminate on the basis of sex. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998) (referring to "Title IX's

contractual nature" in light of its enactment pursuant to Congress's "spending power"). The most appropriate state limitations period to borrow, then, based on the nature of the harm, should be Oregon's six-year statute of limitations for contract claims. *See* ORS § 12.080 (actions on certain contracts or liability). Indeed, Oregon specifically limits the harms covered by Oregon's personal injury statute, ORS § 12.110(1), to those involving "injury to the person or rights of another, *not arising on contract*" (emphasis added). Because the U.S. Supreme Court has now made clear that the harms alleged in private rights of action under Spending Clause statutes like Title IX effectively "arise on contract" and that the remedies available for those claims are akin to breach-of-contract remedies, the most appropriate state statute of limitations to borrow is not the personal injury statute, but Oregon's six-year period for contract claims.

If this Court determines that the state contract statute of limitations governs here, the Title IX claims of all plaintiffs are unquestionably timely. The Court, though, need not reach the issue to deny UO's motion for summary judgment, because, as we explain below, all plaintiffs' claims are timely even under the shorter two-year statute of limitations required by *Stanley*.

## II.    All plaintiffs' claims are timely.

In seeking summary judgment, UO argues that the statute of limitations began to run on the entirety of each plaintiff's claims as soon as she arrived on campus as a member of her team. Mot. at 8-10. This argument is fatally flawed for several reasons.

First, UO committed new, discrete violations of Title IX each academic year when it made each set of funding and funding-allocation decisions about each team's treatment and benefits, each set of annual athletic financial aid awards, and each year's offerings of athletic participation opportunities relative to the male and female representation on campus—and UO will continue to commit new, discrete violations each year going forward if not enjoined. Each

successive academic year's funding and athletics program decisions must therefore be analyzed separately for statute of limitations purposes. *Infra* Section II.A.

Second, the statute of limitations clock does not start running on a Title IX claim until the plaintiff knows or should know that an actionable violation has been committed. *Stanley*, 433 F.3d at 1136. As explained below, simply arriving on campus as a member of a female athletic team (or joining such a team later in the student's college career) would not (and in this case, did not) provide anywhere near the information necessary to constitute notice of a possible Title IX violation. *Infra* Section II.B.

Third, UO has failed to establish through undisputed facts when all plaintiffs—or any plaintiff—knew or reasonably should have known information sufficient to put her on notice that she had a Title IX claim. That is a genuine question of material fact that cannot be determined on the face of plaintiffs' Complaint. *Infra* Section II.B.

### A. UO commits separate and discrete Title IX violations each year, resetting the statute of limitations.

Regardless of whether the statute of limitations is two years or six, all plaintiffs' claims are timely because each academic year involves a discrete set of Title IX violations based on UO's specific allocations of treatment and benefits, financial aid, and athletic opportunities for that particular year, making each year's violations subject to a new limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (discrete acts of discrimination constitute separate, actionable wrongs, and each discrete discriminatory act starts a new clock for filing a claim alleging that act). Each academic year, the numbers of athletes on each team and enrolled female and male students changes. *See* Compl. ¶553 Table E. Each academic year, UO sets a new budget for every team, makes new decisions about athletic financial aid allocations, makes new decisions about facilities, team schedules, team coaches, salaries, travel schedules, and a host of

other services and benefits for each team. *See, e.g.*, Compl. ¶535 Table D (athletic financial aid), ¶442 Table A (coach salaries), ¶527 Table C (recruiting expenses). Though the patterns may be similar, each academic year requires administrators to make new and separate decisions to allocate funding and other resources for varsity spots on teams, financial aid, and other athletic resources. When those decisions result in sex discrimination, as they did here, new and discrete violations of Title IX occur for statute of limitations purposes. *See Pouncil v. Tilton*, 704 F.3d 568, 580 (9th Cir. 2012) (where an employer engages in a series of acts, each of which is intentionally discriminatory, a fresh violation takes place when each act is committed); *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 968 (9th Cir. 2010) ("Universities' decisions with respect to athletics are . . . always—by definition—intentional.") (internal quotation marks and citation omitted).

Because the statute of limitations for plaintiffs' claims resets each year, and plaintiffs filed the Complaint on December 1, 2023, the only plaintiffs whose claims would even arguably be untimely under a two-year statute of limitations are those whose last year playing was in the 2020-21 season or before. None are untimely under the six-year limitations period.

UO points to Josie Cole, for example, saying that her claims should be dismissed because she began playing beach volleyball in the 2017-18 academic year. Cole continued playing, however, through 2020-21. Compl. ¶248. UO has presented no evidence to show when Cole had notice that UO violated Title IX in the 2020-21 season. As shown below, Cole's declaration establishes that she (and her teammates) did not have such notice until significantly later, due in part to the isolating effects of the COVID pandemic. *See* Cole Decl. ¶¶5-7; *infra* Section II.B.

Even ignoring the realities of COVID isolation, there is another reason why Cole and other plaintiffs were not put on notice of UO's annual Title IX violations the instant each school

year began: the relevant information was not available. The Equity in Athletics Disclosure Act

("EADA"), 20 U.S.C. § 1092(g), requires universities to publish *annually* much of the data

necessary for a potential plaintiff to analyze university-wide disparities in treatment, benefits,

and athletic financial aid, including the university's number of athletes by sex, the total number

of enrolled students of each sex, and sex-segregated data on operating expenses, athletic

financial aid, recruiting, and revenues. *See id.*; *Mansourian*, 602 F.3d at 968. That report

provides critical information that Cole and others would have needed to determine whether there

was a potential Title IX violation in 2020-21 for unequal treatment and benefits or unequal

financial aid. UO has not submitted evidence of when its annual EADA report for the 2020-21

season was published. A copy of UO's 2020-21 EADA Report that is available on the internet,

though, shows a reporting date of December 17, 2021. *See* Middleton Decl. Ex. 1, *also available*

*at* https://static.goducks.com/custompages/pages/athlfin/FY2021%20NCAA

%20EADA%20REPORT.pdf. Even if the Court took December 17, 2021, as the notice date for

unequal treatment and benefits and unequal financial aid (which it should not, as discussed *infra*

pp. 16-18), Cole's Title IX claims for the 2020-21 year, filed December 1, 2023, would be timely

under a two-year statute of limitations. Each of the other individual plaintiffs were also playing

in the 2020-21 season or more recently, which means that all claims of all plaintiffs are timely.[2]

---

[2] Plaintiffs Ashley Schroeder, Dahlia McAllister, and Abigail Plevin played from 2020 through 2024. Compl. ¶¶71, 110, 129. Plaintiffs Kendall Clark, Halli Fields, Natasha George, Josie Griffiths, Presley McCaskill, Valerie Peterson, Lolo Folau played from 2022 through 2024. Compl. ¶¶84, 89, 95, 104, 121, 136, 148. Plaintiff Ella Tyus played from 2021 through 2023. Compl. ¶142. Plaintiff Alex Laita played in 2019-20 and 2021-22. Compl. ¶154. Plaintiff Batia Rotshtein played from 2020 through 2023. Compl. ¶161. Plaintiffs Zoe Almanza and Beatrice Wetton played from 2019 through 2023. Compl. ¶¶171, 185. Plaintiff Mia Lopez played from 2019 through 2021. Compl. ¶193. Plaintiffs Delaney Hopen and Alaina Thomas played in the 2020-21 season. Compl. ¶¶198, 263. Plaintiffs Carly Wallace and Alexandra Haden played from 2018 through 2022. Compl. ¶¶207, 242. Plaintiffs Savanna Siegrist, Anastasia Lima, and

Because the statute of limitations resets each academic year with new, discrete Title IX violations, and the earliest possible date that plaintiffs could be deemed to have had notice of potential claims in the 2020-21 season or later is December 17, 2021, less than two years before the Complaint was filed (although the evidence demonstrates they were not on notice until significantly later, *infra* Section II.B), UO's motion should be denied. At a minimum, questions of fact concerning when plaintiffs had notice of possible violations bar summary judgment.

### B.  When plaintiffs knew or should have known of potential Title IX violations is a disputed question of material fact.

As UO acknowledges, determination of when the limitations period begins to run depends on when the plaintiffs had notice of the injury that is the basis of their action. *Stanley*, 433 F.3d at 1136 (quoting *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991)). Here, the injuries that form the basis of the plaintiffs' action stem from UO's widespread unequal treatment of women athletes *overall* compared to the overall men's athletic program, UO's failure to provide equal financial aid to male and female athletes *overall*, and UO's failure to provide equal athletic participation opportunities, again when comparing the male and female athletics programs overall. *See generally Mansourian*, 602 F.3d at 964 ("[a]s applied to intercollegiate athletics, the Department of Education's Title IX regulations interpret the statute as requiring funding recipients to 'provide equal athletic opportunity for members of both sexes'") (quoting 34 C.F.R. § 106.41(c)).

Plaintiffs have alleged three specific, separate types of Title IX injuries: unequal athletic treatment and benefits (Count I); unequal athletic financial aid (Count II); and, with respect to

---

Madelyn LaFollette played from 2019 through 2022. Compl. ¶¶214, 222, 235. Plaintiff Vivian Donovan played from 2020 through 2022. Compl. ¶272. Plaintiff Jade Bernal played in the 2021-22 season. Compl. ¶279. All of the rowing plaintiffs were on the rowing team in 2023-24. Compl. ¶¶294, 303, 309, 317, 323, 331.

PLS.' OPP. TO DEF.'S MOT. FOR SUM. JUDG. ON STATUTE OF LIMITATIONS GROUNDS

the rowing team plaintiffs, unequal athletic participation opportunities (Count III). Each claim requires a separate program-wide comparison of UO's entire women's athletic program with the entire men's athletic program. *See* 44 Fed.Reg. 71413-23 (explaining the Office of Civil Rights' approach to determining Title IX compliance in intercollegiate athletics). Notice of a potential claim therefore involves much more than simply knowing, for example, that the beach volleyball team was treated poorly, or that a particular plaintiff did not receive athletic financial aid, or that the female rowing team was denied varsity status.

For plaintiffs' unequal treatment and benefits claims (Count I), the applicable regulations provide a long list of factors to consider in determining whether the athletic program as a whole provides equal treatment to members of both sexes, including the provision of equipment and supplies; schedules; travel and per diem allowance; coaching and academic tutoring; and several other types of facilities and services. 34 C.F.R § 106.41(c)(2)-(10); *see generally* Pls.' Opposition to Def.'s Mot. for Judgment on the Pleadings on Count I (discussing Count I). Determining whether an individual athlete has a Title IX claim under this theory requires information about the benefits applicable to the university's athletic program as a whole, not a gut-level sense that male athletes seem better treated than female athletes.[3]

Plaintiffs have presented ample evidence to create a dispute of fact about when they should first have had notice of potential claims. Throughout the 2020-21 season, all beach

---

[3] For this reason, *Cole v. Mont. Univ. System*, CV-21-88-M-BMM, 2023 WL 6992812 (D. Mont. Oct. 23, 2023), on which UO relies, is inapposite. In that case, plaintiff Babcock asserted an individual Title IX claim based on what she considered to be sexist treatment during her employment in 2013. Her claim did not rely on the treatment of all other women compared to the treatment of all men across a university's entire athletics program. Her claim is not comparable to the classwide claims asserted here, which turn on—and thus for statute of limitations purposes required notice of—UO's treatment of female and male athletes as a whole throughout UO's athletics program.

volleyball players were kept isolated from other students and other teams due to the COVID pandemic. *See* Schroeder Decl. ¶¶4-5; Cole Decl. ¶¶5-6. Indeed, plaintiffs were prohibited from socializing, going to class, or training with anyone outside their own teams. Schroeder Decl. ¶¶3-5. During that period of unusual isolation, they could not have been on notice that UO provided overall unequal benefits to male and female athletes, when considering the overall programs across several criteria—such as team budgets, recruiting, scheduling, equipment, coaches, travel, and other considerations—because that university-wide comparative information is not only unavailable to an incoming new athlete just starting the school year, but it was also unavailable to UO athletes kept in strict isolation during the pandemic. Schroeder Decl. ¶¶3-6.

For plaintiffs' unequal financial aid claims (Count II), Title IX regulations require "reasonable opportunities" for athletic financial aid "for members of each sex in proportion to the number of students of each sex participating in … intercollegiate athletics." 34 C.F.R. § 106.37(c)(1). An individual student cannot know if she has been injured by her university's unequal provision of athletic financial aid without knowing about the university's overall spending on financial aid for male and female college athletes. Knowing her own individual financial aid award, or even the awards of some of her teammates, is not sufficient; rather, she needs to have notice regarding how the university's total athletic financial aid to *all* women compares to the aid it provides to *all* men. *Id*.

While information about athletic financial aid expenditures is available in an EADA report, the earliest that annual publication becomes available is typically several months after the start of the *next* academic year. *See* Middleton Decl. ¶7. For example, UO published its 2022-23 EADA report on January 8, 2024, and its 2023-24 report is currently still in draft form. *Id*. ¶¶5-6. Any athlete arriving on campus in September 2021 who sought UO's EADA data for the 2021-

22 academic year would have had to wait until January 10, 2023, for that data to be publicly available. *Id*. ¶4. Without that information, she would not have enough information about financial aid provided across the men's and women's athletic programs to constitute notice of a viable Title IX unequal financial aid claim.

Moreover, though the EADA data publication date is instructive as one of the earliest possible dates plaintiffs could have plausibly known about their claims, it is not the touchstone for determining when an athlete should have had knowledge. Under Oregon law, the publication of information relating to a potential claim is not enough by itself to determine that a plaintiff knew or should have known the information and thus had notice of her claim: "The fact that news about some event was *available* at a particular time does not, by itself, resolve whether a reasonable person would have read or heard that news, much less what a reasonable inquiry based on that news would have uncovered." *Johnson v. Multnomah Cnty. Dept. of Cmty. Just.*, 344 Or. 111, 122 (2008); *see Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) ("Where a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law."). Plaintiffs did not have notice regarding UO's overall unequal provision of treatment, benefits, and financial aid to male and female athletes until long after the fact. Schroeder Decl. ¶6.

Plaintiffs' unequal athletic participation opportunities claims (Count III) challenge UO's currently ongoing and future discriminatory conduct. Claims for prospective relief that challenge UO's new discriminatory acts every year cannot be barred by the statute of limitations. *See, e.g.*, *Flynt v. Shimazu*, 940 F.3d 457, 462-63 (9th Cir. 2019).

In short, merely arriving on campus at the start of the school year as a member of a team does not provide an athlete sufficient information to put her on notice that she might be able to

assert any of the three categories of Title IX claims that plaintiffs are pursuing here. Even a meeting with the Senior Women's Administrator to complain about inadequate facilities and a lack of athletic financial aid for beach volleyball would not give the athletes the information they needed to have notice of a class-based Title IX claim, as UO suggests. *See* Mot. at 8; Compl. ¶¶205, 268. This is especially true here, because the Administrator, Lisa Peterson, downplayed their concerns, blamed the women for UO's unwillingness to provide the team with necessary resources, and threatened to cancel the season if they continued to complain. *See* Schroeder Decl. ¶¶7-10; Cole Decl. ¶7. Under Oregon law, efforts to coerce and threaten plaintiffs into dropping their complaints, made by a person in a position of trust like Peterson, can support a factfinder's determination that a reasonable person in plaintiffs' situation would delay investigating the potentially unlawful conduct—and thereby delay the time when plaintiffs should have been on notice. *See Htaike v. Sein*, 269 Or. App. 284, 295 (2015) (efforts to conceal unlawful conduct and obfuscate harm supported application of the discovery rule to extend statute of limitations); *Emrich*, 846 F.2d at 1199.

UO has not submitted any evidence in support of its motion for summary judgment to demonstrate what any plaintiff knew or should have known, at any point in time, about UO's overall men's and women's athletic programs, its provision of financial aid to men as compared to women, or its refusal to accommodate the athletic interests of female students. Plaintiffs, by contrast, have submitted evidence showing that the data and information that plaintiffs needed to assess their possible Title IX unequal treatment and benefits and financial aid claims did not become available until well into the academic year *following* the year encompassed by the data; that they did not have access to sufficient information to be put on notice of their potential Title IX unequal treatment and benefits and unequal financial aid claims until after UO released them

from COVID-based isolation; that plaintiffs' questions and complaints about their treatment were met with dissembling and outright threats; and that they were directly informed by UO's Title IX liaisons that UO was in full compliance with its obligations under Title IX and that the law did not require equal treatment. Schroeder Decl. ¶¶3-12; Cole Decl. ¶¶5-7; Middleton Decl. ¶7.

At a minimum, the timing of notice triggering the beginning of the statute of limitations period is a question of fact that is disputed, barring summary judgment. In a similar Title IX action pending in California, the district court reserved ruling on a statute of limitations argument because, "[w]hen Plaintiffs knew, or could have known, about their alleged injuries is a factual dispute inappropriate for consideration at the motion to dismiss stage." *Fisk v. Bd. of Trustees of Cal. State Univ.*, No. 22-cv-173 TWR (MSB), 2022 WL 16577871 (S.D. Cal. Nov. 1, 2022). Similarly, here, where UO relies solely on the allegations in plaintiffs' Complaint to support its motion and plaintiffs have submitted evidence to show a genuine dispute, summary judgment in favor of UO cannot be granted.

## CONCLUSION

For the foregoing reasons, UO's motion for summary judgment based on the statute of limitations should be denied.

Dated: November 7, 2024         Respectfully submitted,

          /s/Jennifer J. Middleton

Jennifer J. Middleton (OSB No. 071510)
jmiddleton@justicelawyers.com
**JOHNSON JOHNSON LUCAS &**
**MIDDLETON PC**
975 Oak St., Ste. 1050
Eugene, OR 97401-3124
Tel: 541-484-2434

Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
mrubin@altb.com
ecervantez@altber.com
mmurray@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151

Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050

Carey Alexander (*pro hac vice*)
calexander@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
590 Madison Ave., 21st Floor
New York, NY 10022-8553
Tel: 646-290-6009

Neda Saghafi (*pro hac vice*)
nsaghafi@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy.
Malibu, CA 90265-5810
Tel: (213) 788-4050

*Attorneys for Plaintiffs and the Proposed Classes*