Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
Adrianna Simonelli, OSB No. 222481
ASimonelli@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile:  +1.503.727.2222

*Attorneys for Defendant University of Oregon*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, et al., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF OREGON, <br><br> Defendant. | Case No. 6:23-cv-01806-MC <br><br> **DEFENDANT'S MOTION FOR PROTECTIVE ORDER** <br><br> **Pursuant to Fed. R. Civ. P. 26(c)(1)** <br><br> **ORAL ARGUMENT REQUESTED** |

DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

130383.0011\170351008

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a), counsel for the University of Oregon ("University") certifies that the parties made a good faith effort through telephone conference and via email to resolve the dispute at issue in this motion and have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 26(c)(1), the University respectfully moves the Court for a protective order staying all discovery in this case until after the Court has resolved the University's three pending dispositive motions.

## MEMORANDUM OF LAW

### I. INTRODUCTION

The University requests this Court enter a protective order staying discovery in this case until the University's three dispositive motions are resolved. A brief stay is warranted because if the Court grants all—or even some of—the University's requested relief, the scope of this litigation and any corresponding discovery will be substantially narrowed. It makes little practical sense for the parties to expend resources litigating discovery issues that may soon become moot.

A brief stay is all the more appropriate because Plaintiffs have served hugely overbroad discovery requests. Those requests seek an enormous volume of documents and would be unreasonably burdensome for any organization to collect, let alone a public university. For example, as the Plaintiffs' requests currently stand, some of the requests seek information going back fifty-three years. Under Rule 26(c)(1), the Court has a duty to assess the proportionality of any discovery at this juncture. Engaging in discovery now would involve a large and expensive undertaking that would require the University to spend significant public resources without knowing the true scope of this litigation.

1-    DEFENDANT'S MOTION FOR
       PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## II. BACKGROUND

### A. Plaintiffs' Claims.

Plaintiffs are current and former female athletes on the University's varsity beach volleyball team and club crew team who allege that the University violated Title IX. Class Action Complaint (Dec. 1, 2023) ("Compl."), ECF 1. Plaintiffs' Complaint is sprawling—115 pages and over 621 paragraphs long. *Id.* Plaintiffs bring three claims under Title IX alleging sex discrimination by the University in its varsity athletics program. It also seeks to certify three separate classes. *Id.* ¶¶ 575–94.

Plaintiffs' theory of discrimination and the Complaint's cherry-picked allegations in support of it are both fundamentally misguided. The University does not make unequal allocations of resources based on gender or sex. That is why teams that are actually equivalent (e.g. women's track and men's track, women's tennis and men's tennis, women's basketball and men's basketball) have, for example, the same facilities, the same scholarship opportunities, and the same access to trainers. Any differences that may arise stem from the type of sport: for example, football costs more than beach volleyball because it has more players, requires more equipment, and is a contact sport.

Given the legal and factual flaws in Plaintiffs' theory, the University filed three dispositive motions: a Motion for Partial Summary Judgment (ECF 25), a Motion for Judgment on the Pleadings (ECF 26), and a Motion to Dismiss for Lack of Jurisdiction (ECF 27). These motions will be fully briefed on January 31, 2025, when the University files its reply briefs.

### B. Plaintiffs' Discovery Requests.

Plaintiffs served the University with initial discovery requests on April 26, 2024, which were comprised of nine interrogatories and a remarkable sixty-three separate requests for production. Decl. of Sarah J. Crooks in Support of Def.'s Mot. for Protective Order ("Crooks Decl.") ¶¶ 2-3, Exs. 1–2. On their face, these requests reveal the immensely broad and disproportionate scope of discovery Plaintiffs seek. Most of them stretch back at least to 2014–2015. One request seeks documents dating back to 1972. *Id.*, Ex. 2 at 15 ("Produce all

2- DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

documents relating to any request for or consideration of elevating women's rowing to a varsity sport, at any time from 1972 to the present."). Many of the requests have no time limit. *See, e.g.*, *id.* ("Produce all communications between Valerie Johnson and Jason Dillard or any other member of the Athletic Department regarding UO's Title IX compliance."). Other requests are "textbook" examples of overbroad. *See, e.g.*, *id.* at 12 ("Produce all documents that you may use to support your defenses in this matter, including all documents you plan to use at trial.").

The University timely provided written responses to the discovery requests on June 11, 2024. Crooks Decl. ¶ 4. It also produced certain priority documents prior to the parties' July 2024 mediation. *Id*. Shortly after the mediation, lead Plaintiffs' counsel switched law firms and requested a nearly four-month extension of time to respond to the University's motions. *See* Joint Motion for Extension of Time (Aug. 2, 2024), ECF 34. The University did not hear from Plaintiffs regarding discovery or the sufficiency of its discovery responses until it received an email from Plaintiffs' counsel on October 31, 2024. Crooks Decl. ¶ 5.

Plaintiffs also served additional discovery requests on December 10, 2024. *Id.* ¶¶ 6–7. These discovery requests are comprised of an additional sixteen requests for production and six interrogatories, all of which are also overbroad and disproportionate to the needs of this case by, for example, having a nearly 10-year look back. *See id.*, Exs. 3–4.

Finally, in a hearing before the Court on January 10, 2025, Plaintiffs narrowed the type of conduct at issue in this case. In response to argument from the University that the decision-making and conduct of the coaches and assistant coaches in the Athletics Department are relevant for purposes of a Title IX treatment and benefits claim, Plaintiffs' counsel responded by saying the decision-making and conduct of the coaches is not relevant to their Title IX claims.

This further demonstrates Plaintiffs' muddled theory of the case and bolsters the University's contention that their sprawling discovery requests are little more than a fishing expedition designed to waste public resources. If the coaches' conduct is not relevant for a Title IX claim, then neither are requests for production demanding that the University "[p]roduce all

3- DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

documents evidencing athletic equipment storage for all varsity sports from the 2014-15 academic year to the current academic year," or "produce all documents evidencing the quality, amount, suitability, availability, and maintenance and replacement of athletic equipment, uniforms, and gear . . . ." *See* Crooks Decl., Ex. 2 at 9, 12.

### C. The University's Three Pending Dispositive Motions.

In early July 2024, the University filed three dispositive motions that, if granted, would dramatically narrow the scope of the litigation. ECF 25–27. The University's Motion for Partial Summary Judgment asks the Court to apply a one-year statute of limitations to all of Plaintiffs' claims. ECF 25. That motion would have a huge impact on the scope of discovery. Critically, if the statute of limitations is one, or even two years, it will slash the number of Plaintiffs who can bring claims, reduce the size of any class that Plaintiffs seek to certify, and limit how far back in time discovery can extend. Indeed, if the Court agrees the statute of limitations is one year, this case will be dismissed.

The University also filed a Motion for Judgment on the Pleadings arguing that Plaintiffs failed to adequately plead a treatment and benefits claim under Title IX because they neglected to include program-wide allegations and instead myopically focused on an inapt comparison between women's beach volleyball to football. ECF 26. If the Court agrees, Plaintiffs' treatment and benefits claim would disappear from the litigation altogether, thus majorly narrowing the scope of discoverable information.

Finally, the University filed a Motion to Dismiss for Lack of Jurisdiction arguing that the beach volleyball players cannot seek compensatory damages for a financial aid claim, that sixteen of the beach volleyball players do not have standing to seek declaratory and injunctive relief on Count I and II, and that the treatment and benefits claim of sixteen of the beach volleyball Plaintiffs must be dismissed as moot. ECF 27.

4- DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

### D. The University's Staffing Issues.

The University is also facing staffing challenges that makes the prospect of responding to Plaintiffs' overbroad requests especially daunting. *See* Decl. of Douglas Park in Support of Def.'s Mot. for Protective Order ("Park Decl.") ¶ 2, filed concurrently herewith. As noted by Mr. Park, an attorney from his office and his only paralegal who would have been the point-person on document production issues have left the University's General Counsel's Office. *Id.* ¶¶ 3–4. Additionally, a key staff member in the Athletics Department who would have been integral in responding to discovery has also accepted a new position at a different school. *Id.* ¶ 5. Because the University is a public institution, hiring occurs on a longer timeline and cannot be completed as expeditiously as in the private sector. *Id.* ¶¶ 6–7.

## III. ARGUMENT

### A. Legal standard for motion to stay discovery.

A district court has "broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" *Weir v. Joly*, No. CV-10-898, 2011 WL 2015527, at *2 (D. Or. May 24, 2011) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). A protective order can be issued upon a showing of "good cause." *Ciuffitelli v. Deloitte & Touche LLP*, 16-cv-0580, 2016 WL 6963039, at *3 (D. Or. Nov. 28, 2016). Discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And proportionality needs to be assessed at the start of the case because to do otherwise would prevent meaningful consideration of Rule 26(b)(1)'s proportionality mandate. *Ciuffitelli*, 2016 WL 6963039, at *5.

It is well established that courts can relieve a party of the burden of discovery while a dispositive motion is pending. *See Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987). Indeed, district courts can stay discovery where it would be an "unnecessary burden and expense before threshold, dispositive issues . . . [are] resolved." *Clardy v. Gilmore*, 773 F. App'x 958, 959 (9th Cir. 2019).

The Ninth Circuit has not provided a clear standard for evaluating motions for stay of discovery. *Ciuffitelli*, 2016 WL 6963039, at *4. But courts in this district (and elsewhere in the

5-  DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

circuit) have performed a case-specific inquiry that is framed by a set of relevant factors when determining whether a discovery stay is appropriate pending the outcome of a dispositive motion. *Id.* at *5. Those factors include: (1) "[t]he expected extent of discovery in light of the number of parties and complexity of the issues in the case," (2) the type of motion(s), (3) whether the motion "is a challenge as a 'matter of law' or to the 'sufficiency' of the allegations," (4) "[t]he nature and complexity of the action," (5) "[t]he posture or stage of the litigation," (6) and any other relevant factors. *Id*. at *5–8 (internal citation omitted).

### B.   Good cause exists to stay discovery.

An analysis of the factors listed in *Ciuffitelli* demonstrates that discovery should be temporarily stayed pending this Court's ruling on the University's three dispositive motions. Courts in this district routinely grant stays under similar circumstances. *See, e.g.*, *Stauffer v. Matarazzo*, No. 23-CV-01136, 2023 WL 8096907, at *2 (D. Or. Nov. 21, 2023) ("Staying discovery will protect defendants from the undue burden and expense of discovery and promote an efficient use of resources prior to any ruling on the viability of plaintiffs' claims. Accordingly, discovery is stayed until the Court resolves the pending motions to dismiss.").

**Expected extent of discovery.** As currently outlined in their requests for production and interrogatories, the extent of discovery Plaintiffs seek in this litigation is enormous—and the burden of responding to it falls nearly entirely on the University. Accordingly, this factor weighs strongly in favor of a stay. *See Ireland v. Bend Neurological Assocs. LLC*, No. 16-CV-02054, 2017 WL 11571782, at *3 (D. Or. May 8, 2017) (granting motion to stay pending the outcome of dispositive motions in part because "[t]he amount of information plaintiff seeks, given the timespan and number of parties involved, is costly and disproportionate to the needs of the case at this stage in the proceeding").

Rule 26(b)(1) requires that discovery be proportionate to the needs of the case. Here, the discovery that Plaintiffs seek is facially disproportionate. *See e.g.*, Crooks Decl., Ex. 2 at 15 ("Produce all documents relating to any request for or consideration of elevating women's

6-   DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

rowing to a varsity sport, at any time from 1972 to the present."). It will become even more disproportionate if the Court grants some or all of the University's pending dispositive motions.

The Court has an obligation to assess the proportionality of discovery at the start of the litigation—otherwise, any proportionality assessment that comes later fails to provide defendants with the protections outlined in Rule 26(b)(1). *Ciuffitelli*, 2016 WL 6963039, at *5. Currently, the discovery Plaintiffs seek is disproportionate to their claims. For the University to have to respond to the extensive discovery sought by Plaintiffs would require the University to shift public resources (*i.e.* student tuition dollars) *from* its public mission to engaging in prolonged and vast document discovery with Plaintiffs' counsel, before even knowing which claims and Plaintiffs will survive the pending motions. That would be a waste of important public resources.

**Types of motions and whether they challenge the law or sufficiency of allegations.** The University's three pending dispositive motions challenge major portions of this litigation as a matter of law, ECF 25–27, as well as the sufficiency of the Plaintiffs' allegations, so this factor likewise favors the University. That is not surprising given that a ruling in the University's favor on even one of these motions would drastically alter the scope of the litigation and corresponding discovery. Further, Plaintiffs did not need any discovery to respond to the University's motions. *See Stauffer*, 2023 WL 8096907, at *2 (granting motion to stay pending the resolution of dispositive motions in part because "[t]he motions do not require additional discovery, as they are 'purely legal and rooted in plaintiffs' allegations.'") (citation omitted).

**Nature and complexity of the action.** The size and complexity of this litigation further supports a limited stay. This case currently involves thirty-two Plaintiffs who collectively assert three separate federal Title IX sex discrimination claims. The Plaintiffs are comprised of two groups of individuals: current and former varsity beach volleyball players, and current and former club rowers. Compl., ECF 1, ¶¶ 25–284 (varsity beach volleyball), ¶¶ 285–339 (club rowing). Each group brings a constellation of claims premised on distinct legal theories. Plaintiffs also bring their claims on behalf of at least three other classes of individuals. *Id.*

7-   DEFENDANT'S MOTION FOR
     PROTECTIVE ORDER

130383.0011\170351008

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

¶¶ 575–94. Plaintiffs have put forth novel legal theories in this litigation attempting to expand the reach of Title IX. Further, the University Athletics Department is large and facilitates sports for hundreds of students. In short, this case is complex, and discovery should not needlessly be made to be more complicated until the actual scope of Plaintiffs' claims is known.

**Stage of the litigation.** This litigation remains in its early stages. Plaintiffs may point out that they filed this action a little over a year ago, but that response is unconvincing for a couple of reasons. First, the parties devoted considerable resources over the summer to preparing for mediation, which was ultimately unsuccessful. Second, Plaintiffs' counsel switched firms, which necessitated a four-month delay in Plaintiffs' oppositions to the University's dispositive motions. Notably, during that time, Plaintiffs' counsel never contacted the University about discovery or the sufficiency of its discovery responses. Briefing on the University's three pending motions will be complete on January 31, 2025.

## CONCLUSION

It is incumbent upon the University to protect the resources it receives from taxpayers and its students. Requiring the University to expend those scarce public resources and student tuition dollars on overbroad discovery requests that may soon be mooted is the very essence of an unnecessary burden and expense. The Court should therefore enter a protective order and stay discovery until the University's three pending motions are resolved. If any claims remain

8- DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

following the Court's ruling, the discovery stay may be lifted and the parties can confer further about the scope of discovery on those remaining claims and defenses.

DATED: January 14, 2025

**PERKINS COIE LLP**

By */s/ Sarah J. Crooks*
Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
Adrianna Simonelli, OSB No. 222481
ASimonelli@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000

*Attorneys for Defendant
University of Oregon*

9- DEFENDANT'S MOTION FOR PROTECTIVE ORDER

130383.0011\170351008

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222