Jennifer J. Middleton (OSB No. 071510)
jmiddleton@justicelawyers.com
**JOHNSON JOHNSON LUCAS &
MIDDLETON PC**
975 Oak St., Ste. 1050
Eugene, OR 97401-3124
Tel: 541-484-2434

Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050

Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
mrubin@altshulerberzon.com
ecervantez@altshulerberzon.com
mmurray@altshulerberzon.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151

[Additional counsel listed in signature block]

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| ASHLEY SCHROEDER, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>UNIVERSITY OF OREGON,<br><br>    Defendant. | Case No. 6:23-cv-01806-MC<br><br>**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request that Defendant University of Oregon ("Defendant") respond to the following requests for the production of documents ("Requests") within thirty (30) days of service.

## DEFINITIONS

1. "Athletic Financial Assistance" has the same meaning as used in A Policy Interpretation: Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71,413-23 (Dec. 11, 1979), available at https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

3. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

4. "Computer Systems" means any server (whether physical or virtual), desktop computer, laptop computer, tablet computer, mobile computing device, debit card or credit card terminal, payment processing system, smart phone, cellular telephone, corporate network, networking equipment, internet site, intranet site, and the software, programs, applications, scripts, operating systems, or databases used to control, access, store, add, delete, or modify any information stored on any of the foregoing list.

5. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

6. "Gender Equity Plan" has the same meaning as used in NCAA, Gender Equity Planning Best Practices, available at:

https://ncaaorg.s3.amazonaws.com/inclusion/bestprac/NCAAInc_BestPracticeGenderEquity.pdf ("[T]he NCAA membership expects all schools to have an active gender equity plan.").

7. "Title IX" in these requests refers to 20 U.S.C. § 1681 *et seq.*, and 34 C.F.R. Part 106, requiring institutions to provide women and men with equal athletic treatment and benefits, equal athletic financial aid, and equal opportunities to participate in varsity intercollegiate athletics. "Title IX" in these requests DOES NOT refer to sexual harassment (*i.e.*, unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature).

8. "NCAA Articles and Bylaws" mean the articles and bylaws in the NCAA Division I 2024-25 Manual, available at: https://www.ncaapublications.com/productdownloads/D125.pdf, and any synonymous articles or bylaws in effect during the Relevant Time Period.

9. "Participants" has the same meaning as used in A Policy Interpretation: Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71,413-23 (Dec. 11, 1979), and the Clarification of Intercollegiate Athletics Policy Guidance: The Three Part Test (Jan. 16, 1996).

10. "Policies" means policies, procedures, guidelines, practices, rules, and/or manuals.

11. "Structured Data" means: "A set of data elements consisting of at least one file or of a group of integrated files, usually stored in one location and made available to several users. The collection of information is organized into a predefined formatted structure and usually organized into fields of data that comprise individual records that are further grouped into data tables." *The Sedona Conference Glossary: eDiscovery & Digital Information Management*, Fifth Edition, 21 SEDONA CONF. J. 263, 291 (2020).

12. "You," "Your," and "Defendant" means Defendant University of Oregon and any of its agents, employees, or representatives.

## RULES OF CONSTRUCTION

1. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. The use of the singular form of any word includes the plural and vice versa.

4. "Including" means "including, but not limited to" and "including, without limitation."

## INSTRUCTIONS

1. All documents shall be produced in accordance with the Technical Specifications attached hereto as Exhibit 1, which is incorporated as if fully set forth herein, except that if the Court approves a different set of production specifications, those specifications shall supersede Exhibit 1.

2. In responding to these requests, produce all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives. Produce each document requested herein in its entirety, without deletion or excision (except as subject to a claim of privilege in accordance with the instructions below), regardless of whether you consider the entire document to be relevant or responsive to the requests. The fact that a document may have been produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

3. Plaintiffs reserve the right to request inspection of the original documents, including those stored electronically, as they are kept in the usual course of business.

4. If a document responsive to these requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such document, state:

    a) whether the document is missing or lost;

    b) whether it has been destroyed;

    c) whether the document has been transferred or delivered to another Person, including the name, address, and phone number of the Person, and if transferred or delivered to another Person, at whose request;

    d) whether the document has been otherwise disposed of; and

    e) a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

5. If no documents responsive to a Request exist, please state that no responsive documents exist.

6. In responding to a Request, designate the specific Request or Requests to which each document produced is responsive, noting the Bates ranges responsive to the specific Request.

7. If you assert a claim of privilege as to one or more documents or portions of documents sought in this request, provide a privilege log prepared in accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure that lists, for each such document for which privilege is claimed: (i) the number and particular part of the document request to which the supposed privileged information is responsive; (ii) the Bates range, file name, or Document ID number as applicable; (iii) the document title, or in the case of emails, subject line; (iv) the type of document (e.g., letter, memorandum, account statement, etc.); (v) the document's date and the date

of any meeting, conversation, or event reflected or referred to in the document; (vi) the signatory or signatories, author(s), addressee(s), and/or each other person who received a copy of the document or to whom the contents of the allegedly privileged communication contained in the document have been disclosed, either orally or in writing; (vii) a description of the subject matter of the document; (viii) the document's location and custodian; and (ix) the basis for the claim of privilege. Such information should be supplied in sufficient detail to permit Plaintiffs to assess the applicability of the privilege claimed.

8. If a portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

9. If any portion of a document is redacted for purposes other than privilege, the redaction should note the reason for which the redaction has been made (*i.e.*, relevance, privacy, etc.).

10. To the extent you contend that the production of any document or category of documents is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

11. This is a continuing request for the production of documents. If, after making your initial production, you obtain or become aware of any further documents responsive to these requests, you are required to produce such additional documents to Plaintiffs.

## **RELEVANT TIME PERIOD**

Unless otherwise specifically indicated, the following Requests refer to the beginning of the 2016-17 academic year through the present (the "Relevant Time Period"), and include all documents and information that relate to such period, even if prepared or published outside of the Relevant Time Period.

**DOCUMENTS REQUESTED**

**REQUEST FOR PRODUCTION NO. 64**: All Documents You submitted pursuant to NCAA Constitution Article 2(D)(1)(c) and/or NCAA Bylaw 20.2.4.18.

**REQUEST FOR PRODUCTION NO. 65**: All equity, diversity and inclusion reviews You completed pursuant NCAA Bylaw 20.2.4.3.

**REQUEST FOR PRODUCTION NO. 66**: All of Your Gender Equity Plans that were operative during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 67**: All Communications and Documents Concerning Your Gender Equity Plans, including Documents sufficient to show how often You evaluate Gender Equity Plans.

**REQUEST FOR PRODUCTION NO. 68**: Documents sufficient to identify Your Policies Concerning how You awarded, reviewed, finalized, and/or tracked Athletic Financial Assistance for both the academic year and summer.

**REQUEST FOR PRODUCTION NO. 69**: Documents sufficient to identify Your Policies Concerning Title IX compliance.

**REQUEST FOR PRODUCTION NO. 70**: Documents sufficient to identify Your Policies Concerning publicity Concerning intercollegiate athletics.

**REQUEST FOR PRODUCTION NO. 71**: Documents sufficient to identify Your Policies Concerning athletic equipment, uniforms, and gear, and/or maintaining athletic equipment, uniform, and gear, including beginning-of-year distribution of uniform and/or gear to athletes, as well as end-of-year collection of uniform and/or gear from athletes.

**REQUEST FOR PRODUCTION NO. 72**: All Documents and Communications Concerning suggested changes to any component of Your Athletic Department arising from the Fall 2023 meeting with beach volleyball players and Valerie Johnson referenced in Paragraph 12

of A. Schroeder's Declaration ISO Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, attached as Exhibit 2.

**REQUEST FOR PRODUCTION NO. 73**: All Documents and Communications memorializing the Fall 2023 meeting with beach volleyball players and Valerie Johnson referenced in Paragraph 12 of A. Schroeder's Declaration ISO Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, attached as Exhibit 2.

**REQUEST FOR PRODUCTION NO. 74**: All Documents and Communications memorializing compliance meetings between Lisa Peterson and the women's beach volleyball team in the 2020-21 academic year, as referenced in Paragraph 8 of A. Schroeder's Declaration ISO Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, attached as Exhibit 2.

**REQUEST FOR PRODUCTION NO. 69**: Documents sufficient to identify Your Computer Systems with Documents responsive to any of Plaintiffs' document requests.

**REQUEST FOR PRODUCTION NO. 70**: For any Structured Data produced in response to any of Plaintiffs' document requests, Documents sufficient to set forth: identification of the databases or sources of such information; all data dictionaries and mapping Documents necessary to correctly interpret all data produced; all decoding Documents that facilitate the translation of values contained in the data; and mapping Documents or datasets connecting values in previous periods to their equivalent counterparts, to the extent that codes or values have changed over time, as the result of a database platform shift or redesign.

Dated: December 10, 2024                     Respectfully Submitted,

                                                 */s/ Jennifer J. Middleton*
                                               Jennifer J. Middleton (OSB No. 071510)
                                               jmiddleton@justicelawyers.com

**JOHNSON JOHNSON LUCAS & MIDDLETON PC**
975 Oak St., Ste. 1050
Eugene, OR 97401-3124
Tel: 541-484-2434

Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
mrubin@altshulerberzon.com
ecervantez@altshulerberzon.com
mmurray@altshulerberzon.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151

Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050

Carey Alexander (*pro hac vice*)
calexander@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
590 Madison Ave., 21st Floor
New York, NY 10022-8553
Tel: 646-290-6009

Neda Saghafi (*pro hac vice*)
nsaghafi@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy.
Malibu, CA 90265-5810
Tel: (213) 788-4050

*Attorneys for Plaintiffs and the Proposed Classes*

## **EXHIBIT 1 – TECHNICAL SPECIFICATIONS**

1. <u>Time Zone</u>. Electronically stored information ("ESI") shall be processed using a single standard time zone, Pacific Standard Time.

2. Format.

    a) ESI will be produced with single-page TIFFs with load files for e-discovery software that includes metadata fields identifying natural document breaks and extracted text files.

    b) Files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

    c) Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, You must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    d) If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    e) The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

3. De-duplication. You may de-duplicate their ESI production across custodial and non-custodial data sources and the duplicate custodian information removed during the de-duplication process shall be produced in a duplicate/other custodian field in the database load file.

4. Parent-Child Relationships. If any part of an email or its attachments is responsive, the entire email and attachments must be produced, except any portions of the email or attachments that must be withheld or redacted on the basis of privilege or work-product protection. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

5. Email Threading. You may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies, but under no circumstances will email thread suppression eliminate (a) the ability of Plaintiffs to identify every custodian who had a copy of a produced document or email or (b) remove from a production any unique branches and/or attachments contained within an email thread.

6. Metadata Fields. The metadata fields set forth in Appendix A shall be produced to the extent they are reasonably accessible and non-privileged.

7. Hard-Copy Documents. If You elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced

document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

8. Linked Documents. Links to documents (e.g., a link within an email to a document stored in an internal document management or cloud storage system) shall be extracted during processing and produced as separate documents. The Bates Number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.

9. Structured Data. Where a discovery request requires production of structured data, in lieu of producing structured data systems or applications, You shall meet and confer on the content and format of a data sample from such structured data source. The parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and You shall make disclosures necessary for Plaintiffs to understand and evaluate whether the content and format of the data sample would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information.

10. Track Changes and Comments. To the extent that a responsive document contains tracked changes or comments, the document should be imaged showing tracked changes and comments.

## APPENDIX A

| Field Name | Populated For (*Email, Edoc, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveDate | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocExt | All | File extension of the document. |

| Field Name | Populated For (*Email, Edoc, Cellphone, or All*) | Field Description |
|---|---|---|
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged"). |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Indicates the Production Volume Name |
| Is Embedded | All | Descriptor documents that are embedded in another document (<yes> or <no>) |
| Is Hyperlinked | All | Descriptor for documents that are shared via hyperlink within another document as distinct from embedded or attached documents. |
| Connection Date | Cellphone | Date call was connected |
| Connection Time | Cellphone | Time call was connected |
| Terminating Number | Cellphone | Number the transaction terminated to |
| IMEI Originating | Cellphone | The 15-digit number uniquely identifying a wireless device |

# EXHIBIT 2

**JOHNSON JOHNSON LUCAS & MIDDLETON PC**
Jennifer J. Middleton (OSB No. 071510)
975 Oak Street, Suite 1050
Eugene, OR 97401
Tel: (541) 484-2434
jmiddleton@justicelawyers.com

**CLARKSON LAW FIRM, P.C.**
Arthur H. Bryant (*pro hac vice*)
Carey Alexander (*pro hac vice*)
Neda Saghafi (*pro hac vice*)
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070
abryant@clarksonlawfirm.com
calexander@clarksonlawfirm.com
nsaghafi@clarksonlawfirm.com

**ALTSHULER BERZON LLP**
Michael Rubin (*pro hac vice*)
Eve H. Cervantez (*pro hac vice*)
Matthew J. Murray (*pro hac vice*)
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
mrubin@altb.com
ecervantez@altber.com
mmurray@altber.com

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF OREGON,<br><br>Defendant. | Case No. 6:23-cv-01806-MC<br><br>**DECLARATION OF ASHLEY SCHROEDER** |

I, Ashley Schroeder, declare as follows:

1. I began as a member of the University of Oregon's beach volleyball team in 2020 and am a plaintiff in Schroeder v. University of Oregon. I have asserted Title IX claims

for unequal athletic treatment and benefits (Claim 1) and unequal athletic financial aid (Claim 2).

2. Beach volleyball is a Spring sport. When I arrived on campus in the Fall of 2020, I was a member of the beach volleyball team, but we did not meet or start practicing right away. The coach kept pushing back our start date, saying it was because of the COVID pandemic. It was not until late October that we even began practices.

3. When we did have practices, we were by ourselves out there at the Amazon courts, so we were not in a position to see other teams or get a sense for what kind of gear, trainers, coaching, practice schedules, or other treatment they were receiving.

4. Throughout this time, we were also kept isolated from other students and other sports teams because of COVID. Classes were remote. We were strongly advised not to be around others. We were not allowed to have parties or large gatherings.

5. We also could not train together with other teams. For example, even when we were permitted to use the weight training room at the Casanova Center, we could not be in there when there was another team in there. We had to wait outside until they were done. Even the dining center for athletes was all take-out. We could not sit down and have a meal with other players.

6. Because of this COVID isolation, I was not aware of the difference in treatment between beach volleyball and the men's teams. It was not until these restrictions were fully lifted, around Spring 2023, and we could attend classes and sporting and social events with other teams, that I became aware of how vastly differently the men's programs were treated. I still did not know or have information about what overall financial aid spending was for men's and women's programs overall.

7. Even though we did not realize how differently the men's teams were treated, we did know that we were not receiving the support we had been promised. We made complaints to the Senior Women's Administrator, Lisa Peterson, and to our coaches about the lack of a decent playing facility, the lack of athletic financial aid, and the conditions we were made to play in, among other things.

8. In that 2020-2021 year, the team had at least two compliance meetings with Senior Women's Administrator Peterson. She told us repeatedly that it was a unique season because of COVID and that all the benefits that we had been promised were put on hold until the pandemic was over.

9. Administrator Peterson downplayed or ignored our reports of being denied basic support, gear, facilities, equipment, and financial aid. She told us that we were lucky to be playing and that if we continued to complain, the season would be cancelled. The Beach Volleyball season had been cancelled in the Spring of 2020, so we took this threat seriously.

10. She said that lost sports revenue due to COVID cancellations meant that there were no resources for any of the teams. We were told that every team was making sacrifices, which made us think even the men's teams were being under-resourced as well because football was not playing.

11. After most of the COVID restrictions were lifted, and we could see that men's teams were treated differently, the administrators still came up with other excuses. I recall Chief Compliance Officer Jody Sykes telling us that once we started beating other teams with more resources, then we would get adequate courts and facilities. (But even when she said that, we had been able to defeat properly resourced teams). We were also told that our team's budget was small because we didn't have enough fans coming to watch our games – even

though all we had for spectators was that one bench. UO tried to make us think that the lack of equal treatment to the men's teams was our own fault.

12. Even after The Oregonian publicized how poorly we were treated as a team, UO administrators continued to tell us that there were no Title IX violations and that Title IX did not require equal treatment of our team. I recall a meeting in the Fall of 2023 with Valerie Johnson, who was the new Senior Women's Administrator and Title IX liaison. She came to a practice and spoke to the team. She had an almost scolding tone and said that Title IX does not require equality in sports. She demanded that individual players "raise your hand if you are really interested in this Title IX stuff." She offered that if any of us wanted a primer or enlightenment on Title IX, we could go to her office and she would educate us on what Title IX really means. It felt almost threatening, as though she was trying to identify and single out who the troublemakers were.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November _4_, 2024

*Ashley Schroeder*

Ashley Schroeder

## **CERTIFICATE OF SERVICE**

    I certify that on December 10, 2024, a true copy of the **PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** was served as indicated below:

| | |
|---|---|
| Sarah Crooks | [ ] U.S. Mail |
| Stephen English | [ ] Electronic Filing |
| PERKINS COIE LLP | [ x ] Email only |
| 1120 NW Couch 10th FL | [ ] Fax |
| Portland, OR 97209 | |
| scrooks@perkinscoie.com | |
| senglish@perkinsoie.com | |

Attorneys for Defendant

 

JOHNSON JOHNSON LUCAS & MIDDLETON, PC

*/s/ Jaclyn Hayes*

Jaclyn R. Hayes, Legal Assistant
541/484-2434
541/484-0882 fax
jhayes@justicelawyers.com