Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
Adrianna Simonelli, OSB No. 222481
ASimonelli@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile:  +1.503.727.2222

*Attorneys for Defendant University of Oregon*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, KENDALL CLARK, HALLI FIELDS, NATASHA GEORGE, JOSIE GRIFFITHS, JADE BERNAL, DAHLIA MCALLISTER, PRESLEY MCCASKILL, ABIGAIL PLEVIN, VALERIE PETERSON, ELLA TYUS, SIULOLOVAO FOLAU, ALEX LAITA, BATIA ROTSHTEIN, ZOE ALMANZA, BEATRICE WETTON, MIA LOPEZ, DELANEY HOPEN, CARLY WALLACE, SAVANNAH SIEGRIST, ANASTASIA LIMA, MADELYN LAFOLLETTE, ALEXANDRA HADEN, JOSIE COLE, ALAINA THOMAS, VIVIAN DONOVAN, ELISE HAVERLAND, RIVER RIBEIRO, SOPHIA SCHMITZ, SYDNEY WEDDLE, CLAIRE DALEY and ANNA MARIA KNIGHT, Individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>UNIVERSITY OF OREGON,<br><br>    Defendant. | Case No. 6:23-cv-01806-MC<br><br>**AMENDED REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS**<br><br>**Oral Argument: February 26, 2025, 10:00 a.m.** |

AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

**I.     INTRODUCTION**

In their opposition to the University's motion for summary judgment on statute of limitations (SOL) grounds, Plaintiffs argue that Oregon's six-year SOL for contract claims should apply to their Title IX claims, not the one or two-year SOL for tort claims (either the one-year SOL for sex-based discrimination claims, or the two-year SOL for personal injury claims). Plfs.' Opp'n to Def.'s Mot. for Summ. J. at 12–13 (Nov. 7, 2024), ECF 45 (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)). That argument—which no court has previously accepted—is wrong for a simple reason: Plaintiffs do not allege a breach of contract claim against the University. Rather, Plaintiffs allege that the University caused them harm by failing to comply with a statutory duty, a quintessential tort claim. Moreover, Plaintiffs cannot allege a breach of contract claim against the University based on Title IX because there is no contract between them and the University. Rather, to the extent a contract related to Title IX exists, it is between the University and the federal government. *Cummings*, the only case Plaintiffs cite in support of their six-year contract SOL argument, is inapposite because *Cummings* had nothing to do with statutes of limitations—it dealt with the type of damages recoverable under Title IX, not the type of harm caused by Title IX violations. Plaintiffs' reading of *Cummings* conflates the type of harm caused by a statutory violation with the type of money damages that may be awarded for that harm and should therefore be rejected.

Plaintiffs next argue that it would be wrong for the Court to apply a one-year SOL to their claims. But they concede that established law requires courts to "borrow the most appropriate state statute of limitations" for Title IX claims, *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (citation omitted), and further concede that Oregon has a state statute—ORS § 659.850—that is literally modeled off of Title IX and specifically prohibits higher educational institutions from discriminating against students on the basis of sex. *See Aiken v. Lieuallen*, 39 Or. App. 779, 782 (1979). Because the harm Plaintiffs allege under Title IX is *the exact same harm* that ORS § 659.850 seeks to prevent, that state statute's one-year SOL is

| 1- | AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT | **Perkins Coie LLP**<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone: +1.503.727.2000<br>Fax: +1.503.727.2222 |
|---|---|---|

the "most appropriate" and should apply here. *Stanley*, 433 F.3d at 1134 (citation omitted). Plaintiffs' argument to the contrary creates and then attacks a strawman and should be rejected.

If the Court declines to apply either the one-year or six-year SOL, then Plaintiffs concede that Oregon's two-year SOL for general tort claims applies to their claims. But Plaintiffs then argue that their claims are timely regardless of which SOL applies because (1) their claims re-accrued every year they were on campus; and (2) Plaintiffs could not have known about their alleged unequal treatment until within a year of when they filed their Complaint. Plaintiffs are wrong on both fronts.

Plaintiffs' first argument ignores longstanding federal law on claim accrual, which makes clear that Title IX claims accrue as soon as a plaintiff receives notice of them, regardless of whether the alleged unequal treatment persists.

Plaintiffs' second argument is contravened by their own Complaint. Based on the facts Plaintiffs themselves allege, there can be no reasonable dispute that Plaintiffs were on clear notice of the alleged discrimination as soon as they became involved with their respective sports teams. For example, Plaintiffs knew they practiced and competed at an off-campus field, while the football team practiced and competed at an on-campus field. Plaintiffs also knew they did not have scholarships but must have known that many football players did.

Plaintiffs are also wrong to the extent they argue that they could not have known about programmatic differences in money spent on men's sports compared to women's sports because the University's Equity in Athletics Disclosure Act (EADA) reports were not publicly posted until December of each year when Plaintiffs were enrolled. That argument overlooks two key undisputed facts: (1) the University's annual EADA reports have been publicly available *since 1996* to anyone who requested them, and (2) the University has publicly posted its EADA reports since at least 2016 (and likely since 2011). Thus, all the information Plaintiffs needed to know to file their Complaint (which is based on a perceived disparity in money spent on men's sports

2-   AMENDED REPLY ISO DEFENDANT'S MOTION
     FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

versus women's sports) has been available to them at least since the time they started school at the University—if not well before.

Accordingly, Plaintiffs' claims should be dismissed as untimely.

## II.  ARGUMENT

This Court should apply either a one or two-year SOL period to Plaintiffs Title IX claims and then dismiss this action as time-barred, either in whole or in substantial part. Plaintiffs advance two novel arguments in opposition: (1) that this Court should apply a six-year limitations period under *Cummings*; and (2) that Plaintiffs' claims did not accrue until years after they enrolled at the University and started competing in their sport, even though their Complaint expressly claims that the alleged discrimination has been in place for years before they came to the University and began against them as soon as they matriculated. Both of those arguments should be rejected.

### A.  The Applicable Statute of Limitations is One, or at Most, Two Years.

The parties agree that Title IX claims "borrow the most appropriate state statute of limitations." *Stanley*, 433 F.3d at 1134 (citation omitted). They also agree that the "essential inquiry" in this borrowing exercise is for a court to determine "the nature of the harm alleged." *Id.* at 1135. In other words, if a Title IX plaintiff alleges the same type of harm that a state statute seeks to prevent, that state statute's limitations period should apply. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (noting that "where a federal statute "does not contain a statute of limitations, the court must apply the statute of limitations of the most analogous state law").

#### 1.  The Court Should Apply a One-Year SOL.

Here, the nature of the alleged harm is sex-based discrimination by a higher education institution. *See* Class Action Complaint at 110–14, Counts I–III (Dec. 1, 2023), ECF 1 ("Compl."); *see also* ECF 45 at 5 ("[The] University of Oregon . . . has failed . . . to provide athletic treatment and benefits, financial aid, and participation opportunities to female students

3- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

that are equal to the unparalleled athletic treatment and benefits, financial aid, and participation opportunities that it provides to male students."). Thus, the "most analogous [Oregon] state law," *Pickern*, 293 F.3d at 1137 n.2, is ORS § 659.850, which states that "[a] person may not be subjected to discrimination in any . . . higher education program or service" and makes clear that "[d]iscrimination . . . based on . . . sex" is prohibited. ORS § 659.850(1)(a)(A), (2).

Indeed, Oregon courts have recognized that ORS § 659.850 and its implementing regulations "were *modeled closely* after the federal regulations implementing Title IX of the Educational Amendments of 1972." *Aiken*, 39 Or. App. at 782 (emphasis added). Given that legislative history, the substantial overlap between ORS § 659.850 and Title IX is clear: both prevent discrimination based on sex by educational institutions that receive public funds, and both protect against unlawful discrimination based on sex—the very harm being alleged here. *Compare* ORS § 659.850(1)–(2) *with* 20 U.S.C. § 1681(a). It therefore follows that ORS § 659.860 is the most analogous state law and that its one-year limitations period should apply here.

Courts routinely find that specific state civil rights statutes are the most analogous and borrow from them in determining the appropriate limitations period for a federal Title IX claim. For example, in *Moore v. Greenwood School District No. 52*, 195 F. App'x 140, 143 (4th Cir. 2006), the Fourth Circuit held that the one-year limitations period contained in South Carolina's Human Affairs Law applied because that statute was more analogous to the Title IX plaintiff's claims than the state's general personal injury statute, which had a two-year limitations period. *See id.* (citing S.C. Code. Ann. § 1-13-80(A)(1) (2005), which makes it unlawful for an employer to "discriminate against an individual . . . because of the individual's . . . sex"). *Moore* is not an outlier—to the contrary, borrowing limitations periods from specific anti-discrimination statutes like ORS § 659.850(1)–(2) is commonplace. *See Washington v. Univ. of Md., E. Shore*, No. 19-2788, 2020 WL 5747199, at *1 (D. Md. Sept. 24, 2020) ("[T]his Court finds that the . . . limitations period set forth in the Maryland Fair Employment Practices Act . . . applies to

4- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Plaintiff's Title IX employment discrimination claims." (internal citation omitted)); *Mooberry v. Charleston S. Univ.*, No. 20-cv-00769, 2022 WL 123005, at *4 (D.S.C. Jan. 13, 2022) (finding that "the one-year statute of limitations from the South Carolina Human Affairs Law . . . applies to Plaintiff's Title IX claims" instead of the three-year limitations period for general personal injury claims (internal citation omitted)); *Misenheimer v. Univ. of S.C.*, No. 20-4487, 2023 WL 6651134, at *20 (D.S.C. July 27, 2023) (same), *report and recommendation adopted*, 2023 WL 5949401 (D.S.C. Sept. 13, 2023).

Plaintiffs' only response to this straightforward conclusion is to create and then attack a strawman: they claim that because ORS § 659.860 requires plaintiffs to comply with certain notice and administrative exhaustion requirements before filing suit, that statute's one-year limitations period cannot apply here. Not so. Critically, the University does not argue that Plaintiffs must comply with any notice or exhaustion requirements before proceeding with their federal Title IX claims. We only argue that ORS § 659.860's one-year limitations period—not its notice and exhaustion requirements—must be "borrowed." *Cf. Stanley*, 433 F.3d at 1134.

In other words, the University does not argue that federal Title IX plaintiffs in Oregon must comply with ORS § 659.860's notice or exhaustion requirements. Nor do we argue that the SOL should "vary depending on the identity of the defendant, as well as on defendant's response to claim presentment" like the plaintiff in *Stanley*. *Id.* Rather, we merely argue that the nature of the harm alleged here—which is the "essential inquiry" in determining which SOL should apply (*id.*)—is most analogous to ORS § 659.850, which specifically addresses sex discrimination by a higher education institution and contains a one-year limitations period. Plaintiffs make no response to that argument.[1]

---

[1] Notably, if Plaintiffs' argument was correct, then Oregon's two-year SOL for regular personal injury tort claims also could not apply to their claims because Oregon law also requires plaintiffs to provide a 180-day tort-claim notice to public bodies like the University before filing suit. *See* ORS § 30.275(1)–(2) (requiring 180-day tort-claim notice to public bodies); *Pickett v. Washington County*, 31 Or. App. 1263, 1266 (1977) ("Pleading notice sufficient to satisfy the requirements of ORS 30.275 is a jurisdictional requirement for a court to hear a claim under the Tort Claims Act."). But that is not the law. Federal claims (as opposed to state claims) may be

| 5- | AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT | **Perkins Coie LLP**<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone: +1.503.727.2000<br>Fax: +1.503.727.2222 |
|---|---|---|

### 2. Alternatively, the Court Should Apply a Two-Year SOL.

Alternatively, if the Court disagrees that the one-year SOL applies to Plaintiffs' claims, it should hold that the two-year limitations period applies. The Ninth Circuit has held that state statutes of limitations for personal injury claims are sufficiently analogous for Title IX purposes. *Stanley*, 433 F.3d at 1135–36 ("[W]e join every other federal circuit to consider this issue and hold that Title IX claims are subject to the applicable state statute of limitations for personal injury actions."). Oregon applies a two-year SOL to personal injury claims (*see* ORS § 12.110(1)), so that period should apply here if the Court declines to apply the one-year limitations period set forth in the more specific statute, ORS § 659.860. *See Samuelson v. Or. State Univ.*, 162 F. Supp. 3d 1123, 1134–35 (D. Or. 2016).[2]

### B. Plaintiffs' Contention That a Six-Year Breach of Contract Limitations Period Applies is Incorrect.

Plaintiffs next urge this Court to do what no other court has done: hold that the SOL for a Title IX claim is the SOL applicable to contract claims, which in Oregon is six years. *See* ECF 45 at 12–13 (citing *Cummings*, 596 U.S. at 212). In Plaintiffs' view, *Cummings* "clarified that the harm redressed through a private right of action under the Spending Clause legislation is a breach-of-contract type of harm." ECF 45 at 8. And because Congress enacted Title IX under its Spending Clause authority, so Plaintiffs' argument goes, "the most appropriate state statute of limitations to borrow is . . . Oregon's six-year period for contract claims." *Id.*

---

brought against public bodies without complying with state law notice or exhaustion requirements, as is the case with every Section 1983 claim filed against public bodies in Oregon. *See e.g., Ljubich v. Oregon Department of Corrections*, 2023 WL 3166469, at *2 (D. Or. April 27, 2023); *see also Samuelson*, 162 F. Supp. 3d at 1134 (applying Oregon's two-year SOL for personal injury tort claims even though analogous state claims would have been barred due to Plaintiff's failure to provide a timely tort-claim notice as required by ORS § 30.275(1)–(2)).

[2] The University recognizes that this Court previously applied a two-year limitations period in *Samuelson*, 162 F. Supp. 3d at 1134–35. But it should depart from that holding here for a couple of reasons. First, the defendant in *Samuelson* did not argue that ORS § 659.860's one-year limitations should be applied, so this Court is addressing that specific question for the first time here. Second, and in any event, *Samuelson* involved allegations that the defendant university was deliberately indifferent to the plaintiff's sexual assault—a claim that plainly sounds in personal injury. *Id.* The allegations in this case sound in *sex discrimination*, an issue that Oregon regulates with a specific state statute, ORS § 659.860.

6- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

As noted above, the main problem with Plaintiffs' argument is that they do not allege a breach of contract claim against the University, and there is no contract between the University and Plaintiffs to breach. Rather, to the extent there is any contract, it is between the University and the federal government. What Plaintiffs have alleged against the University is the failure to comply with a statutory duty (*i.e.*, Title IX obligations), which is clearly a tort claim. *See Comcast of Or. II, Inc. v. City of Eugene*, 346 Or. 238, 252 (2009) (explaining that "'[t]ort' means the breach of a legal duty that is imposed by law, *other than a duty arising from contract or quasi-contract*[]" (emphasis added) (citation omitted)).

Further, Plaintiffs' argument is based on a dramatic overreading of *Cummings*. *Cummings* was a remedies case that had nothing to do with limitations periods, much less the inquiry for determining the proper SOL for Title IX claims. *See* 596 U.S. at 216. The question in *Cummings* was whether "'damages for emotional harm' are . . . recoverable in private actions brought to enforce the Rehabilitation Act or the Affordable Care Act." *Id.* at 217 (citation omitted). So not surprisingly, the Supreme Court had no occasion to analyze or discuss SOL questions, let alone the proper SOL for Title IX claims.[3] It strains credulity to assume that the Supreme Court intended to overturn decades of well-established Title IX SOL precedent in a case that had nothing to do with either SOLs or Title IX.

The University has been unable to find any court that has accepted the SOL argument Plaintiffs advance here, and Plaintiffs' Opposition cites no such case. But at least one court expressly rejected it. In *Doe v. Emory University, Inc.*, the Title IX plaintiff argued that post-*Cummings*, "Georgia's six-year statute of limitations for breach of contract actions should control." No. 21-CV-4859, 2022 WL 17419555, at *5 (N.D. Ga. Dec. 5, 2022). The court disagreed despite acknowledging that in *Cummings*, "the Supreme Court applied a 'contract-law

---

[3] There are many types of money damages: *e.g.*, punitive damages, emotional distress damages, compensatory damages, liquidated damages, fines, statutory treble damages, etc. In *Cummings*, the Court merely discussed the type of damages available for Title VI (and by extension Title IX) claims. The issue of what SOL applies to Title VI and Title IX claims was never raised.

7- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

analogy' to determine what remedies are available to private litigants" suing under Spending Clause statutes. *Id.* That "contract law analogy" made no difference, the *Emory* court reasoned, because "*[a]t no point in this inquiry did the Court suggest that the contract-law analogy also governs the statute of limitations in Spending Clause cases*, and since *Cummings*, courts continue to use the limitations period for personal injury claims." *Id.* (emphasis added). That same analysis applies with equal force here.

The absence of authority supporting Plaintiffs' six-year SOL argument is not surprising—it contravenes the Ninth Circuit's guidance in *Stanley* and every other court in the nation, all of whom have applied SOLs applicable to a tort claim in Title IX cases, not the SOL applicable to a contract claim. Again, in *Stanley*, the Ninth Circuit made clear that the "essential inquiry" for SOL borrowing is the "nature of the harm alleged" and not the type of damages that may be awarded for the harm. 433 F.3d at 1135. Thus, adopting Plaintiffs' six-year SOL would require the Court to find that the harm alleged in Plaintiffs' Complaint is a breach of contract. But Plaintiffs' own Complaint refutes such a finding. Indeed, it makes clear that the harm alleged is discrimination based on sex that is prohibited by a statute, not the breach of a contract. The Court need look no further than the Complaint's central allegations to confirm that fact. *See* Compl. ¶ 1 ("This is a sex discrimination class action against the University of Oregon . . . for depriving its female student-athletes of equal treatment . . . .").

Accordingly, the Court should reject Plaintiffs' novel theory that a six-year breach of contract SOL applies to their Title IX claims.

### C.  Plaintiffs' Accrual Arguments Are Incorrect.

Once a one-year or two-year limitations period is applied, Plaintiffs' claims are either completely or substantially time-barred. That is because those claims accrued years before Plaintiffs filed suit in December 2023.

"Although Title IX borrows a state statute of limitations period, federal law governs the 'determination of the point at which the limitations period begins to run.'" *Stanley*, 433 F.3d at

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

1136 (citation omitted). "[T]he touchstone for determining the commencement of the limitations period is notice: 'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (alteration in original) (quoting *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979). A court may dismiss a plaintiff's claims when "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

In this case, Plaintiffs knew or should have known of their alleged harm when they started on the University's campus as members of their respective sports teams. Plaintiffs' Complaint confirms as much: it alleges that Plaintiffs met with the University's senior women's administrator, Lisa Peterson, to voice concerns about their treatment during the 2021-2022 school year—years before the Complaint was filed in December 2023. *See* Compl. ¶¶ 205, 268. If Plaintiffs were voicing such concerns, they had to have known about them. Plaintiffs make two primary arguments in opposition; neither is availing.

*First*, Plaintiffs contend that the University "committed new, discrete violations of Title IX each academic year when it made each set of funding and funding-allocation decisions," so the limitations clock resets every year. ECF 45 at 13. As an initial matter, that argument has no bearing on Plaintiffs' treatment and benefits claim, which does not hinge upon annual scholarship decisions but rather the day-to-day treatment, none of which is alleged to have changed on a year-to-year basis. Indeed, under the Complaint's theory of discrimination, Plaintiffs and all other female athletes suffered from the same allegedly inferior facilities, programmatic funding, benefits and opportunities every year for years, going back decades. Accordingly, the SOL clock does not reset every year insofar as those claims are concerned. *See Greer v. DiGuglielmo*, No. 08-1110, 2009 WL 812715, at *2 (E.D. Pa. Mar. 25, 2009) (finding that claims were untimely because "each monthly deduction here was an 'ill-effect' of the

9- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

original decision . . . and not an independent and distinct wrong"), *aff'd*, 348 F. App'x 702 (3rd Cir. 2009); *Miele v. Pension Plan of N.Y. State Teamsters Conf. Pension & Ret. Fund*, 72 F. Supp. 2d 88, 101 (E.D.N.Y. 1999) (finding that claim of recurring benefits was time-barred because the claim accrued at the time of the initial miscalculation). Furthermore, even with the financial aid claims, Plaintiffs fail to allege that the year-to-year decisions *had any effect on them specifically*. In other words, even if new money was not distributed each year, Plaintiffs' alleged injuries commenced the first time they received diminished aid or no aid, which they clearly knew about when they did not receive the aid.

*Second*, Plaintiffs argue they were not on notice of their claims despite playing on the sports teams in question. In Plaintiffs' view, being on campus "as a member of a female athletic team . . . would not . . . provide anywhere near the information necessary to constitute notice of a possible Title IX violation," and factual questions remain as to when they received such notice. ECF 45 at 14. Although unclear, Plaintiffs appear to blame their lack of knowledge on the fact that the University's EADA reports that list the amount of money spent on men's and women's programs was not released until the December of each year they were enrolled at the University. Plaintiffs' EADA arguments are a red herring because the EADA reports have been publicly available since 1996 (as required by the statute itself) and have been publicly posted for years.[4] Indeed, the University itself publicly posts its EADA data and has done so since at least 2016, and likely since 2011. *See* Decl. of Nate Krueger in Support of Def.'s Mot. for Partial Summ. J. (Krueger Decl.), ¶¶ 2–3.

To the extent that Plaintiffs' notice argument is based on something other than the publicly available EADA data, it is difficult to credit: under Plaintiffs' alleged theory, *every aspect* of their life as student-athletes was infected with discrimination, so it would have been

---

[4] *See* Nat'l Women's Law Ctr., *VII. Legislative Developments: The Equity in Athletics Disclosure Act, Breaking Down Barriers* 103, 106 (2015), https://nwlc.org/wp-content/uploads/2015/08/BDB07_Ch7and8.pdf (noting that "[b]y October 15 of each year, the institutions must make this information available to the public and to the Department of Education").

10- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

impossible for them not to perceive it. For example, Plaintiffs cannot credibly argue that they were unaware that they lacked scholarships while certain football players had them or that they were unaware that they practiced and competed at an off-campus park, while the football team played on campus at Autzen Stadium, or that they were assigned to one weight room with all the other teams, while the football team had its own weight room. To trigger the running of an SOL for discrimination claims, a person does not have to know all facts that may constitute a claim. Rather, a person simply must be on notice of the alleged unequal treatment. *See Doe 1 v. Univ. of S.F.*, 685 F. Supp. 3d 882, 896 (N.D. Cal. 2023) (explaining in a Title IX case that "'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' 'The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'" (internal citations omitted)). Plaintiffs clearly had such notice.

Plaintiffs attempt to salvage their claims with declarations from two of the named Plaintiffs averring to their claimed lack of notice (ECF 46–47), but that effort falls short for two reasons. First, Ninth Circuit law is clear that an *objective standard* governs whether Plaintiffs were on notice of their claims, so their purported subjective understandings or even misunderstandings are of little import. *See Stanley*, 433 F.3d at 1136 ("The touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows *or has reason to know of the injury* which is the basis of his action." (emphasis added) (cleaned up)). In this case, the alleged "injury" is unequal treatment based on sex, which as noted above, Plaintiffs must have known about—otherwise, they could not have complained about it to Lisa Peterson soon after arriving on campus. Plaintiffs also should have known about the differences in overall funding for men's sports and women's sports (*i.e.* programmatic disparities) because the University's EADA reports have been publicly posted since at least 2016.

11- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Second, even if the declarations were relevant, it would make no difference because they are conclusory. It is well established that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997). As described in further detail below, Plaintiffs' declarations, which do no more than assert that they were not on notice of the discrimination alleged, are just that—conclusory and self-serving.

**Count I.** The self-serving declarations fail to establish that there is a dispute of fact as to whether Plaintiffs were on notice of the treatment and benefit claim. At best, the declarations merely demonstrate that the COVID-19 pandemic caused disruption to the University's athletic department (as it did for all other operations). But that alleged disruption had nothing to do with sex discrimination and instead had everything to do with a crushing global pandemic. *See* Decl. of Ashley Schroeder ¶ 2 (Nov. 7, 2024), ECF 46 ("The coach kept pushing back our start date, saying it was because of the COVID pandemic."); Decl. of Josie Cole ¶ 5 (Nov. 7, 2024), ECF 47 ("In my Junior year, 2019-2020, the COVID pandemic hit. Our season was cancelled."). Plaintiffs' own Complaint demonstrates that the women on the beach volleyball team were well aware of any perceived difference in treatment from the get-go. Indeed, it specifically alleges that at least some Plaintiffs met with the University's senior women's administrator, Lisa Peterson, to voice their concerns during the 2021-2022 school year.[5] *See* Compl. ¶¶ 205, 268. But this Complaint was not filed until December of 2023.

**Count II.** The EADA data also put Plaintiffs on clear notice of their financial aid claim. Critically, all EADA reports are available to the public, prospective students, and current students—including Plaintiffs—on the University's website. *See* Decl. of Jennifer Middleton ¶ 2

---

[5] Plaintiffs cite *Htaike v. Sein*, 269 Or. App. 284 (2015) to rescue their claims, but that reliance is misplaced. In *Htaike*, the court extended the SOL because the defendant used threats "of legal action and jail to coerce plaintiffs into complying," which, of course, are not at issue here. *Id.* at 297.

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

(Nov. 7, 2024), ECF 48; *see also*, Krueger Decl. ¶¶ 2–3. In response, Plaintiffs seek to take advantage of a state law equitable exception to the notice requirement. ECF 45 at 20 (citing *Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*, 344 Or. 111, 122 (2008)). But that case is inapposite. *Johnson* addressed whether "the appearance of newspaper articles in local papers" put the plaintiff who had been raped by the defendant on notice of defendant's alleged criminal conduct of raping numerous young women over a multiyear period. *Id*. at 113. Obviously, nothing of that sort happened here. Moreover, as noted above, to the extent EADA data can support Plaintiffs' claims of discrimination based on programmatic funding for men's versus women's teams, the EADA has required that that data be publicly available to anyone who requested it since 1996, and that information has been posted on the University's website and various other sites since at least 2016. In light of that, a reasonable person would have known or should have known the facts necessary to allege the type of Title IX claims Plaintiffs allege here.

**Count III.** If this Court adopts the one-year SOL, all of the women's club rowing Plaintiffs' claims should also be barred. Def.'s Mot. for Summ. J. on Statute of Limitations at 10 (July 3, 2024), ECF 25 ("Mot."). The rowing Plaintiffs surely knew as soon as they arrived on campus (if not before) that the University did not have a varsity rowing program. Compl. ¶¶ 294, 303, 309, 317, 323, 331.[6] Stated differently, they had to have known that both the men's and women's rowing teams were club teams. Plaintiffs do not contend otherwise.

## CONCLUSION

For the reasons outlined in the University's Answer and other motions, the University disagrees that it has discriminated against Plaintiffs based on their sex. Plaintiffs' Complaint is misleading because it omits at least three things, all of which confirm that Plaintiffs do not have a viable Title IX claim: (1) the University treats equivalent teams (*e.g.*, men's and women's basketball, men's and women's track and field, men's and women's tennis, men's and women's

---

[6] If the Court applies a two-year SOL, then some of the rowing Plaintiffs' claims would not be time-barred because they arrived on campus at the latest in the fall of 2022. Mot. at 10.

13- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

cross-country, etc.) equally; (2) the University does not even field various men's teams (*e.g.*, men's soccer, men's lacrosse, men's volleyball, men's team stunts and gymnastics) so that it can provide more financial aid, benefits, and opportunities to women; and (3) any funding disparities between men's and women's sports on a program-wide basis are attributable not to sex, but to the fact that football is a different type of sport that generates the revenue that pays for every other sport at the University (men's and women's). Plaintiffs do not acknowledge any of that.

Nevertheless, this Court should dismiss Plaintiffs' claims as time-barred under the applicable one-year limitations period that applies to sex-based discrimination claims. Alternatively, the Court should apply the two-year limitations period and dismiss most of the Plaintiffs and their claims.

DATED: February 3, 2025                    **PERKINS COIE LLP**

By: */s/ Stephen F. English*
   Stephen F. English, OSB No. 730843
   SEnglish@perkinscoie.com
   Sarah J. Crooks, OSB No. 971512
   SCrooks@perkinscoie.com
   Adrianna Simonelli, OSB No. 222481
   ASimonelli@perkinscoie.com
   1120 N.W. Couch Street, Tenth Floor
   Portland, Oregon 97209-4128
   Telephone: +1.503.727.2000

*Attorneys for Defendant University of Oregon*

14- AMENDED REPLY ISO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222