UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, et al., Individually and on behalf of all those similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>UNIVERSITY OF OREGON,<br><br>             Defendant. | Case No. 6:23-cv-01806-MC<br><br>**STIPULATED ORDER REGARDING ELECTRONICALLY STORED INFORMATION** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LR 26(1)(c), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.    ESI Disclosures**

Within 45 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.    <u>Custodians</u>. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2.    <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (e.g., shared drives, servers), if any, likely to contain discoverable ESI.

3.    <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.    ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media</u>. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    <u>Time Zone</u>. The parties shall process and produce all data in Pacific Standard Time.

3.    <u>Search Methodology</u>. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, and data sources (including custodians) before any such effort is undertaken. No party shall use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, if any.  If the parties cannot resolve their disagreements regarding technology assisted review methodologies, they shall

promptly bring the dispute to the Court for resolution.  The parties shall continue to cooperate in revising the appropriateness of the search methodology.

        a.      Prior to running searches:

               i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

               ii.      After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

               iii.      The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

    4.    <u>Format</u>.

        a.      ESI will be produced to the requesting party with single-page TIFFs with load files for e-discovery software that includes metadata fields identifying natural document breaks and extracted text files.

        b.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

        c.      Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

   d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

   e. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

   5. <u>De-duplication</u>. The parties may de-duplicate their ESI production across custodial and non-custodial data sources and the duplicate custodian information removed during the de-duplication process shall be produced in a duplicate/other custodian field in the database load file.

   6. <u>Parent-Child Relationships</u>. The parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any portions of the email or attachments that must be withheld or redacted on the basis of privilege or work-product protection.  The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved.  The child-document should be consecutively produced immediately after the parent-document.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

   7. <u>Email Threading</u>. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting party to identify every custodian who had a copy of a produced document or email or (b) remove from a production any unique branches and/or attachments contained within an email thread.

   8. <u>Metadata Fields</u>. The parties agree that the metadata fields set forth in Appendix A shall be produced to the extent they are reasonably accessible and non-privileged. The list of

metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

9.    <u>Hard-Copy Documents</u>. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

10.    <u>Linked Documents</u>. To the extent possible, links to documents (e.g., a link within an email to a document stored in an internal document management or cloud storage system) shall be extracted during processing and produced as separate documents. The Bates Number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.

11.    <u>Structured Data</u>. Where a discovery request requires production of structured data, in lieu of producing structured data systems or applications, the parties shall meet and confer on the content and format of a data sample from such structured data source. The parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and the producing party shall make disclosures necessary for the requesting party to understand and evaluate whether the content and format of the data sample would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information.

12.    <u>Track Changes and Comments</u>. To the extent that a responsive document contains tracked changes or comments, the document should be imaged showing tracked changes and comments.

13.    <u>Third-Party Documents</u>. A party that issues a non-party subpoena shall include a copy of this Order with the subpoena and state that the Parties to the Action have requested that third parties produce documents in accordance with the specifications set forth herein.  The issuing party shall timely notify other parties when it receives non-party productions and shall timely provide copies of such productions to other parties in the format in which they were received from the third party.

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by forensics.

b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d.     Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(3)).

      e.     Backup data that are duplicative of data that are more accessible elsewhere.

      f.     Server, system or network logs.

      g.     Data remaining from systems no longer in use that is unintelligible on the systems in use provided that such data and systems are identified to the opposing party.

      h.     Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage) and has been preserved.

**E.  Privilege**

1.     A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include:

      a.  A sequential number associated with each privilege log record;

      b.  The date of the document redacted or withheld;

      c.  The Bates numbers of documents redacted or withheld;

      d.  The identity of all persons who sent or prepared the documents, and identification of which of them are attorneys;

      e.  The identity of all persons designated as addressees or copyees, and identification of which of them are attorneys;

      f.  The title or subject of a document;

      g.  A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege; and

h. The type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

Privilege logs will be produced to all other parties no later than 30 days after delivering a production related to discovery unless an earlier deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information between a party and its counsel generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. A producing party may invoke its rights pursuant to Fed. R. Evid. 502(d) over any document produced in this litigation subject to the following limitations:

a. If a receiving party introduces a document at a deposition, as an attachment to a motion or pleading, or otherwise informs the producing party that the receiving party intends to rely upon the document (an "introduced document"), the producing party must invoke its rights under this order within seven (7) days of the document being introduced.

b. Upon written notice of the production of protected document(s) by the producing party or oral notice if notice is delivered on the record at a deposition, the receiving party must promptly return, sequester, or destroy the specified document and any

electronic or hard copies the receiving party has and may not further use or disclose the information until the claim that it is a protected document has been resolved.

c.  To the extent that the information contained in a document subject to a claim that it contains privileged or protected information has already been used in or described in other documents generated or maintained by the receiving party, then the receiving party will not further use such documents until the claim has been resolved.

d.  If the receiving party has disclosed the specified documents before being notified of their production, it must take reasonable steps to retrieve them.

e.  The producing party shall provide an updated privilege log as set forth in this Order for such documents setting forth the author, recipient(s), and subject matter of the document, along with the basis for the claim of privilege or evidentiary protection, as well as any portion of the document that does not contain privileged or protected information.

f.  The receiving party shall have fourteen (14) days from receipt of notification of the producing party's claim of privilege over a document to determine whether to contest such claim and to notify the producing party in writing of an objection to the claim of privilege and the grounds for that objection.

g.  In the event that the parties cannot reach agreement as to whether a specified document is a protected document, the producing party shall submit the disputed document to the Court under seal within ten (10) days of its receipt of the receiving party notice of disagreement for a determination of the claim and will provide the Court with the grounds for the asserted privilege or protection.  Until the Court rules as to whether any disputed document is a protected document, the receiving party may not use it for any purpose.

h.  Upon a determination by the Court that a specified disputed document is a protected document, and if the specified document has been sequestered rather than returned

or destroyed, the specified document shall be returned or destroyed. If the Court determines that the specified disputed document is not a protected document, then the receiving party will be relieved of the obligation to sequester it and may review or use it in an appropriate manner.

[Signature Page Follows]

DATED:          April 24, 2025

PLAINTIFFS                                              DEFENDANT


By: */s/ Matthew J. Murray*                             By: */s/ Adrianna Simonelli* (with permission)
Jennifer J. Middleton (OSB No. 071510)                  Stephen F. English, OSB No. 730843
jmiddleton@justicelawyers.com                           SEnglish@perkinscoie.com
**JOHNSON JOHNSON LUCAS &**                             Sarah J. Crooks, OSB No. 971512
**MIDDLETON PC**                                        SCrooks@perkinscoie.com
975 Oak St., Ste. 1050                                  Adrianna Simonelli, OSB No. 222481
Eugene, OR 97401-3124                                   ASimonelli@perkinscoie.com
Tel: 541-484-2434                                       **PERKINS COIE LLP**
                                                        1120 N.W. Couch Street, Tenth Floor
                                                        Portland, Oregon 97209-4128
Michael Rubin (*pro hac vice*)                          Telephone: +1.503.727.2000
Eve H. Cervantez (*pro hac vice*)                       Facsimile: +1.503.727.2222
Matthew J. Murray (*pro hac vice*)
Aaron M. Schaffer-Neitz (*pro hac vice*)                *Attorneys for Defendant University of Oregon*
mrubin@altber.com
ecervantez@altber.com
mmurray@altber.com
aschafferneitz@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Ste. 300
San Francisco, CA 94108-4733
Tel: 415-421-7151


Arthur H. Bryant (*pro hac vice*)
abryant@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103-3103
Tel: 213-788-4050


Lori Bullock (*pro hac vice*)
lbullock@bullocklawpllc.com
**BULLOCK LAW PLLC**
309 E 5th Street, Suite 202B
Des Moines, Iowa 50309
Tel: 515-423-0051


*Attorneys for Plaintiffs and the Proposed Classes*

## ORDER

Based on the foregoing, IT IS SO ORDERED.


DATED: ___4/25/2025___


                                        ___s/Michael J. McShane___
                                        The Honorable Michael J. McShane
                                        United States District Judge

# Appendix 1

| Field Name | Populated For (*Email, Edoc, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All | The directory structure of the original file(s).  Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveDate | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations.  For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocExt | All | File extension of the document. |
| Title | Edoc | Any value populated in the Title field of the document |

| Field Name | Populated For (*Email, Edoc, Cellphone, or All*) | Field Description |
|---|---|---|
| | | properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged"). |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Indicates the Production Volume Name |
| Is Embedded | All | Descriptor documents that are embedded in another document (<yes> or <no>) |
| Connection Date | Cellphone | Date call was connected |
| Connection Time | Cellphone | Time call was connected |
| Terminating Number | Cellphone | Number the transaction terminated to |
| IMEI Originating | Cellphone | The 15-digit number uniquely identifying a wireless device |