IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ASHLEY SCHROEDER, KENDALL CLARK, HALLI FIELDS, NATASHA GEORGE, JOSIE GRIFFITHS, JADE BERNAL, DAHLIA MCALLISTER, PRESLEY MCCASKILL, ABIGAIL PLEVIN, VALERIE PETERSON, ELLA TYUS, SIULOLOVAO FOLAU, ALEX LAITA, BATIA ROTSTEIN, ZOE ALMANZA, BEATRICE WETTON, MIA LOPEZ, DELANEY HOPEN, CARLY WALLACE, SAVANNAH SIEGRIST, ANASTASIA LIMA, MADELYN LAFOLLETTE, ALEXANDRA HADEN, JOSIE COLE, ALAINA THOMAS, VIVIAN DONOVAN, ELISE HAVERLAND, RIVER RIBEIRO, SOPHIA SCHMITZ, SYDNEY WEDDLE, CLAIRE DALEY, and ANNA MARIA KNIGHT, individually and on behalf of all those similarly situated, | Case No. 6:23-CV-01806-MC  **OPINION AND ORDER** |

       Plaintiffs,

    v.

UNIVERSITY OF OREGON,

       Defendant.

_____

MCSHANE, Judge:

Plaintiffs are two groups of female student-athletes attending the University of Oregon ("the University" or "UO"). The first group includes five current or former members of the women's varsity beach volleyball team. Through their Title IX claims against Defendant UO, these plaintiffs seek to represent classes consisting of current and future (and for certain claims, former)

1 – OPINION & ORDER

female varsity student-athletes at the University. The second group consists of four current or former members of the women's club rowing team at UO. These plaintiffs seek to represent a class of all present and future female students at UO allegedly deprived of the opportunity to participate on women's varsity intercollegiate athletic teams.[1] Collectively, Plaintiffs move to appoint Altshuler Berzon LLP, Arthur Bryant Law PC, Bullock Law, PLLC, and Johnson Johnson Lucas & Middleton as class counsel.

Plaintiffs allege that UO violates Title IX of the Education Amendments of 1972 ("Title IX") by providing female students with unequal treatment and benefits, unequal financial aid, and fewer varsity athletic participation opportunities than those provided to male students. Plaintiffs now move to certify multiple classes under Federal Rule of Civil Procedure 23.

At this stage, this Court does not decide whether UO adequately supports or invests in women athletics. Instead, the Court addresses whether, under the Federal Rules of Civil Procedure, Plaintiffs have satisfied the requirements for class certification. Because Plaintiffs have not shown that they are typical representatives of their classes, and for additional reasons discussed below, Plaintiffs' Motion to Certify is DENIED. The Court will, however, consider a limited class certification in the future if Plaintiffs can succeed on the merits in their request for injunctive relief in Claim II. This limited class would be comprised of all current and future female students who participate or will participate in intercollegiate varsity athletics at UO and do not receive all athletic financial aid permissible under federal law.

///

---

[1] The Beach Volleyball Plaintiffs move to appoint Ashley Schroeder, Batia Rotshtein, Natasha George, and Abigail Plevin as class representatives, and Carly Wallace as a class representative only for the damages classes under Rule 23(b)(3), for Counts I and II. Mot. to Certify the Class 2, ECF No. 103. The Rowing Plaintiffs move to appoint Elise Haverland, River Ribeiro, Sophia Schmitz, and Sydney Weddle as representatives for the Count III class under Rule 23(b)(2). *Id.*

## BACKGROUND

Defendant University of Oregon is a state educational institution that receives federal funds and is subject to the requirements of Title IX. The University sponsors eight men's varsity teams (baseball, basketball, cross country, football, golf, tennis, indoor track and field, and outdoor track and field) and twelve women's varsity teams (acrobatics and tumbling, basketball, beach volleyball, cross country, golf, lacrosse, soccer, softball, tennis, indoor track and field, outdoor track and field, and (indoor) volleyball). Tholin Decl. Exs. O–S, ECF No. 105. The University also hosts 41 club sports teams, including rowing, rugby, skiing, swimming and diving, and water polo. Prahl Decl. 2, ECF No. 140.

## BEACH VOLLEYBALL: AN EMERGING SPORT

Beach volleyball emerged from the recreational beach culture of Southern California. The sport developed professionally during the 1970s and 1980s and international recognition followed when beach volleyball became an Olympic sport at the 1996 Atlanta Games.

At the collegiate level, the sport grew rapidly in the 2000s, particularly among Division I institutions in warm-weather conferences. In 2009, the National Collegiate Athletic Association ("NCAA") designated women's beach volleyball (then commonly called "sand volleyball") an "emerging sport" for women. The NCAA Emerging Sports for Women program was designed to encourage schools to add women's athletic participation opportunities in furtherance of Title IX compliance. As participation expanded nationally, the NCAA formally recognized beach volleyball as a championship sport in 2015–16, after the sport exceeded the minimum sponsorship threshold required for NCAA championship status. By then, major conferences including the Pac-12 Conference, of which the University was a member at the time, had begun sponsoring the sport.

Universities increasingly added beach volleyball both because of the sport's popularity and because it provided additional athletic opportunities for women.

The history of beach volleyball at the University began in 2013, when the athletic department announced the addition of women's sand volleyball as the university's twelfth women's varsity sport, with competition beginning in spring 2014. Initially, the team's roster was comprised of members of the indoor volleyball team who used the sand courts to get year-round practice. Today, the roster is composed of athletes who specialize in beach volleyball.

The University did not approach the roll-out of beach volleyball with urgency. Plaintiffs document at length the deficiencies in the University's funding, facilities, coaching, and equipment in the Complaint. Meanwhile, the University is quick to point out the progress the team is making as the sport flourishes at the University: new facilities have been approved, a locker room has been provided, scholarships are available for recruitment, and a new coach has been hired. The University also submits that the COVID-19 pandemic slowed the rollout of this emerging sport.

### ROWING: A CLUB SPORT

The University of Oregon does not sponsor a varsity NCAA women's rowing team. Rowing at UO is a club sport, meaning it operates outside of the school's athletic department and is generally student organized. The rowing club at UO was founded in 1973 and the number of participants has fluctuated. In 2023, for example, the size of the team dropped from thirty to fifteen. While the team is competitive at a club level, it does not meet qualification standards for varsity-level competition.

///

///

///

4 – OPINION & ORDER

## THE ELEPHANT IN THE ROOM: FOOTBALL

Plaintiffs spill significant ink describing disparities in treatment between themselves and the men's football roster at UO. By all accounts, football is the proverbial elephant in the Title IX room. Except in this case the elephant is a duck—a very large and well-fed duck.

College football at major universities has evolved into a highly commercialized enterprise requiring extraordinary institutional investment to compete at the highest tiers of the sport. At nationally competitive programs, the expenditures associated with football routinely exceed those devoted to many, and sometimes all, other athletic programs combined. The modern football program demands a stadium capable of accommodating tens of thousands of spectators; extensive game-day operations and security; expansive locker room and training facilities; specialized coaching staffs numbering in the dozens; strength and conditioning programs; sports medicine and physical therapy personnel; recruiting operations; charter travel; housing and meal programs; academic tutoring; scholarships; and year-round training infrastructure. These expenditures are designed to recruit and retain a comparatively large roster of elite athletes in an intensely competitive national market.

The UO football program exemplifies this reality. Although the University's unassuming mascot and clashing color scheme may project a collegiate informality, Oregon football's ticket sales, conference distributions, media rights agreements, sponsorships, licensing, merchandising, donor contributions, and other related revenue streams generate substantial income for the University and its athletic department. The scale of those revenues, however, is tied directly to the scale of the investment required to sustain a nationally competitive program.

If Title IX compliance were measured solely by comparing raw expenditures between men's football and women's sports on a dollar-for-dollar basis, few universities sponsoring major

Division I football programs could satisfy the statute. Title IX therefore does not require identical aggregate spending between men's and women's athletics, nor does it prohibit universities from sponsoring high-cost sports such as football.[2] Instead, the governing regulations evaluate whether institutions provide equitable athletic participation opportunities and equivalent treatment and benefits to male and female athletes when viewed across the athletic program as a whole.[3]

Reasonable observers may question whether the modern commercialization of college football remains consistent with the educational and amateur-athletic principles historically associated with universities. The drafters of Title IX in 1972 could scarcely have anticipated the emergence of contemporary college football as a multi-billion-dollar national industry. Nevertheless, the statutory and regulatory framework accounts for the unique economic and logistical realities associated with football programs and cautions against simplistic comparisons between football expenditures and those associated with other sports.

**PROPOSED CLASSES**

In pursuit of their three claims, Plaintiffs ask this Court to certify the following five classes:

**A.  Count I: Equal Treatment and Benefits**

1.  A class for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2) of "all current and future female students who participate or will participate in intercollegiate varsity athletics at UO." Mot. 1, ECF No. 103.

2.  A class for damages under Rule 23(b)(3) of "all current and former female students who participated or will participate in intercollegiate varsity athletics

---

[2] *See Fisk v. Bd. of Trs. of Cal. State Univ.*, 2022 WL 16577871, at *8 (S.D. Cal. Sept. 15, 2023); Department of Education's Office of Civil Rights Policy Interpretation; Title IX and Intercollegiate Athletics, 44 Fed. Reg. 7146.
[3] *See Working v. Lake Oswego Sch. Dist.*, 2017 WL 2954363, at *2 (D. Or. June 29, 2017), *report and recommendation adopted*, 2017 WL 3083256 (D. Or. July 19, 2017) (finding that plaintiffs "must demonstrate disparities in treatment based on an overall comparison of the male and female programs, including 'whether disparities of a substantial and unjustified nature exist in the benefits, treatment, services, or opportunities afforded male and female athletes in the institution's program as a whole[.]'").

at UO at anytime from the start of the 2020–21 academic year until the end of the 2025–26 academic year." *Id*.

## B. Count II: Equal Financial Aid

3. A class for declaratory and injunctive relief under Rule 23(b)(2) of "all current and future female students who participate or will participate in intercollegiate varsity athletics at UO and do not receive all athletic financial aid permissible under federal law." *Id*.

4. A class for damages under Rule 23(b)(3) of "all current and former female students who participated or participate in intercollegiate varsity athletics at UO and did not or do not receive all athletic financial aid permissible under federal law at any time from the start of the 2020–21 academic year until the end of the 2025–26 academic year." *Id*. at 1–2.

## C. Count III: Effective Accommodation

5. A class for declaratory and injunctive relief under Rule 23(b)(2) of "all present and future female students at UO who are being deprived of the opportunity to participate on women's varsity intercollegiate athletic teams." *Id*. at 2.

### <u>STANDARD OF REVIEW</u>

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)) (internal quotation marks omitted). For class certification, Plaintiffs "bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v.*

*Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 257 F.3d 1266 (9th Cir.

2001)). To satisfy Rule 23(a), Plaintiffs must show:

> (1) that the class is so large that joinder of all members is impracticable
> (numerosity); (2) that there are one or more questions of law or fact common to the
> class (commonality); (3) that the named parties' claims are typical of the class
> (typicality); and (4) that the class representatives will fairly and adequately protect
> the interests of other members of the class (adequacy of representation).

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *Ellis*, 657 F.3d at 980.

Courts apply a preponderance of the evidence standard for compliance with Rule 23. *Olean*

*Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en

banc); *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). In doing so, courts are "at liberty to

consider evidence which goes to the requirements of Rule 23 even though the evidence may also

relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th

Cir. 1992) (citation and internal quotation marks omitted). A court receives "the substantive

allegations of the complaint as true[.]" *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

Plaintiffs must "actually *prove*—not simply plead—that their proposed class satisfies each

requirement of Rule 23[.]" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## DISCUSSION

### I.    Financial Aid Injunctive Class Is Stayed

In its discretion and based on the circumstances of the case, this Court stays consideration

of Plaintiffs' Motion with respect to the Financial Aid injunctive class pending final disposition

on the merits. *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). Beach Volleyball Plaintiffs

allege that the University "has not provided and does not provide athletic financial aid to its female

varsity student-athletes in proportion to their athletic participation rate[,]" in violation of Title IX.

Compl. 98, ECF No. 1. Plaintiffs seek to certify injunctive relief and damages classes in pursuit of

their claim. Mot. 1. In their Motion for Class Certification, Plaintiffs for the first time incorporate an allegation that the University's summer aid program disproportionately benefits male athletes at the expense of female athletes. Mot. 17. Notably, UO's summer aid policy resulted in 103 men and only 13 women benefiting from summer financial aid in the 2023–24 academic year. Zyla Decl. ¶ 7, ECF No. 107. The University omits any mention of its summer financial aid program in its briefing.

Before certification of an injunctive class, this Court will hear the underlying merits on Plaintiffs' Financial Aid claim. The parties shall confer as to a briefing schedule, as well as a date for an evidentiary hearing on this claim and report to the court within thirty days.

## II.    Equal Treatment and Benefits Classes Fail Rule 23(a) Typicality Requirement

Beach Volleyball Plaintiffs allege that UO "fails to provide athletic treatment and benefits to its female student-athletes equal to those it provides its male varsity student-athletes, and, accordingly, intentionally discriminates against its female student-athletes in violation of Title IX." Compl. 61. Because the Beach Volleyball Plaintiffs are not typical of their proposed class members, certification of the Equal Treatment and Benefits classes is DENIED. This Court evaluates Rule 23(a)'s four requirements for the classes—numerosity, commonality, adequacy, and typicality—in turn.

### A. <u>Numerosity and Commonality</u>

The numerosity and commonality factors are satisfied for these classes. The Treatment and Benefits classes are composed of enough proposed members for joinder to be impracticable. A class as small as forty can be large enough to render joinder impracticable. *Jordan v. Los Angeles Cnty*, 669 F.2d 1311,1320 (9th Cir. 1982); *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 836 (9th Cir. 2022) (noting the Ninth Circuit applies *Jordan's* numerosity framework despite *Jordan's*

vacatur for other reasons). Here, the proposed Treatment and Benefits classes each contain a minimum of two hundred members. Mot. 17, 24–25; Tholin Decl. Ex. B ("Duffus Rep.") 12, ECF No. 105 (noting that at least 200 women participate in varsity sports at UO annually during relevant years). Certifying classes of this size would help ameliorate substantial logistical burdens related to adding and removing plaintiffs. *A.B.*, 30 F.4th at 839; *Fisk v. Bd. of Trs. Of Cal. State Univ.*, 2026 WL 49335, at *8 (S.D. Cal. Jan. 7, 2026) (finding numerosity adequate for a proposed class of two hundred current female student athletes plus future class members).

The Treatment and Benefit classes also satisfy commonality. A single question of law or fact common to the class is sufficient for commonality. *Dukes*, 564 U.S. at 350; Fed. R. Civ. P. 23(a)(2). "These common questions may center on shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (brackets, citation, and internal quotation marks omitted). Plaintiffs present a common legal question shared by the proposed classes: whether UO complies with Title IX in its allocation of treatment and benefits to varsity athletes. Mot. 27. An answer to this common question would resolve issues "central to the validity" of the claims of all members of the classes "in one stroke[.]" *Dukes*, 564 U.S. at 350.

## B. Adequacy

The University argues that the Beach Volleyball Plaintiffs are inadequate representatives for the proposed Treatment and Benefits classes. The University raises two objections: (1) Beach Volleyball Plaintiffs have an interest in diverting limited funds away from other teams and toward the beach volleyball team; and (2) class counsel's fee arrangement with the Plaintiffs precludes them from being adequate representatives. Resp. 25–26, ECF No. 144. Both are unconvincing. Because the Beach Volleyball Plaintiffs have no actual conflicts with their proposed class

members[4] and class counsel can competently prosecute the action on behalf of the classes, Plaintiffs satisfy the adequacy requirement of Rule 23(a).[5]

### C.  Typicality

Rule 23(a)'s typicality requirement is what ultimately prevents certification of the Treatment and Benefits classes. For a class to be certified, the representative plaintiffs' "claims and defenses" must be "typical" of those of the class. Fed. R. Civ. Pro. 23(a)(3). Generally, typicality exists when the class representatives are "part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). However, typicality is not met when "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (citations omitted). Because the Beach Volleyball Plaintiffs face distinct defenses to their Treatment and Benefits claims unshared by their proposed class members, Plaintiffs fail to demonstrate typicality for the related classes.

Plaintiffs' Complaint focuses almost entirely on the experiences of the beach volleyball team in comparison to the football team. And while Plaintiffs certainly allege dispiriting treatment, the facts surrounding the treatment of the beach volleyball team subject the Beach Volleyball

---

[4] Representative parties are required to fairly and adequately protect the interest of the proposed class. Fed. R. Civ. P. 23(a)(4). To assess adequacy, a court asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (quotation marks omitted). A conflict between the named plaintiffs and the remaining class members must be actual—not speculative—to defeat adequacy. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). The University's contention that a conflict exists because Plaintiffs have an "interest in diverting [ … ] finite resources to the beach volleyball program instead of to other women's sports teams" is speculative. Resp. 25; *Cummings*, 316 F.3d at 896. Plaintiffs affirmed their commitment to advocating for the proposed classes in a manner that does not disproportionately benefit the beach volleyball team. Rotshtein Decl. ¶ 10, ECF No. 114; Schroeder Decl. ¶ 12, ECF No. 116; Wallace Decl. ¶ 7, ECF No. 117; George Decl. ¶ 9, ECF No. 110; Plevin Decl. ¶ 7, ECF No. 112.

[5] This Court is also unpersuaded that the fee arrangement between Plaintiffs and class counsel precludes adequacy. See Resp. 26. Plaintiffs' counsel are experienced attorneys. *See* Murray Decl., ECF No. 123. And counsel has demonstrated competency thus far in the litigation through their legal advocacy, discovery investigation, and ability to meet court deadlines. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs to unique defenses, ultimately undermining typicality. *Hanon*, 976 F.2d at 508. While differing factual scenarios between a named plaintiff and proposed class members do not necessarily defeat typicality, here, the factual landscape from which the Plaintiffs' claims arise is too dissimilar from that of their proposed class members.

Unlike most of the other teams at UO, the beach volleyball team practiced and competed at an off-campus venue. Sykes Decl. 8, ECF No. 142. Until September 2025, the beach volleyball team was the only varsity team to not have its own locker room. *Id*. at 9. In addition, every varsity team except for beach volleyball had a dedicated full-time head coach who was not simultaneously coaching another team. *Id*. at 4. Moreover, Beach Volleyball Plaintiffs, unlike their fellow proposed class members, would need to address whether their participation in an "emerging" varsity sport influences the merits of their Title IX claim. *Id*. at 2.[6] Addressing these "unique situation[s]" will likely become "a major focus of the litigation[.]" *Hanon*, 976 F.2d at 509. As a result, focus spent on addressing the defenses unique to the Beach Volleyball Plaintiffs would create an impermissible danger that absent class members will suffer. *Id*. at 508.

The Court notes that, despite the years this case has been in litigation and despite attempts by the Plaintiffs to recruit members of other women's athletic teams to join the litigation, no athlete outside of beach volleyball has done so. While this is not a fatal blow to class certification, it does highlight the discreet focus of this litigation on the unique development and treatment of the beach volleyball team.

Because the Beach Volleyball Plaintiffs have a unique team history likely to draw

---

[6] "An 'emerging sport' is a designation made by the NCAA to help schools provide more athletic opportunities for women and more sponsored sport options for schools, while helping that 'emerging sport' achieve NCAA championship status." Sykes Decl. 2. Beach volleyball became a NCAA championship sport in 2015, before the start of the proposed class periods. *Id*. The Court underscores that it does not answer the question of how emerging sports are considered in a Title IX analysis. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177–78 (1974) (finding that a motion for class certification is not the proper stage to resolve the merits of a claim).

considerable attention during litigation, Plaintiffs are not typical of their Treatment and Benefits classes and certification is DENIED.

### III.    Beach Volleyball Plaintiffs' Damages Classes Fail Rule 23(b)(3)

Plaintiffs seek to certify two damages classes—one for their Treatment and Benefits claim and one for their Financial Aid claim. Mot.1–2. Both classes are inappropriate for certification under Rule 23(b)(3). A damages class is proper for certification when plaintiffs demonstrate that Rule 23(a) is satisfied and a "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Ellis*, 657 F.3d at 979–80. Because a class action is not a superior method to litigate the damages claims raised here, certification of the Treatment and Benefits and Financial aid damages classes is DENIED.

A class action may be superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.2d 1227, 1235 (9th Cir. 1996). Rule 23(b)(3) lists relevant, non-exhaustive factors to determine whether a class action is superior: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." A court may consider other factors as well. *Wolin*, 617 F.3d at 1175. For example, "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Id.* at 1175–76.

In favor of the Plaintiffs, no other prospective class member has filed a similar action, and

the District of Oregon is a desirable forum in which to concentrate such litigation. Fed. R. Civ. P. 23(b)(3)(B)–(C). However, class-wide adjudication of these damages claims will not "promote greater efficiency." *Valentino*, 97 F.3d at 1234. Plaintiffs are seeking certification for litigation that requires far too many distinct individual determinations that frustrate manageability. *See Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 651 (D. N.H. Jan. 29, 2020) ("Notably, if plaintiffs were seeking certification for litigation purposes, the need to litigate the individualized issue of each class members' subjective perception of the environment would likely present manageability issues at trial.").

As discussed, the Beach Volleyball Plaintiffs' experiences are atypical of the members of the proposed Treatment and Benefits class. In terms of determining damages here, Plaintiffs' claims would require "individual and therefore voluminous evidence concerning liability and remedies," making a class action unmanageable. *Lanzarone v. Guardsmark Holdings, Inc*., 2006 WL 4393465, at *5 (C.D. Ca. Sept. 7, 2006).

The proposed Financial Aid damages classes, in particular, would require numerous individualized inquiries to determine which student-athletes were eligible for various forms of financial aid *and* the amount of aid they hypothetically would have received. These determinations would be further complicated by the University's policy of allocating financial aid on a team-by-team basis and allowing coaches to make discretionary awards to student-athletes. Mullens Depo. 19–22, ECF 105-5. As a result, even student-athletes who may have been eligible for aid were not necessarily awarded scholarships because of considerations such as talent level or team need.

Nor would certification of Plaintiffs' proposed classes create any significant efficiency gains. It is unlikely that numerous "individual and overlapping lawsuits" would sprout if class certification is denied. *See Wolin*, 617 F.3d at 1176 (finding superiority in part because thousands

of potential class members could bring the same action as the named plaintiffs in pursuit of modest recovery for their individual injuries). To the extent they are amenable to class action, Plaintiffs' claims would be better suited for a narrower class comprised solely of beach volleyball players.

Because Plaintiffs do not convince this Court that class-wide resolution is superior to other methods of adjudicating the conflicts, the damages classes do not satisfy Rule 23(b)(3) and certification is DENIED.

## IV.    Effective Accommodation Class

Finally, the Rowing Plaintiffs ask the Court to certify an injunctive relief class on behalf of all "present and future female students at UO who are being deprived of the opportunity to participate on women's varsity intercollegiate athletics teams." Mot. 2. The University argues that the Rowing Plaintiffs fail to satisfy Rule 23(a)'s numerosity, typicality, and adequacy requirements for this class, as well as Rule 23(b)(2). Resp. 27–30, 42. Namely, the University argues that the Rowing Plaintiffs do not have the ability to row at a Division I level, subjecting them to a unique defense fatal to class certification. Resp. 30; *see Hanon*, 976 F.2d at 508. Because the Rowing Plaintiffs do not show they are members of the proposed class, certification of the Effective Accommodation class is DENIED.

Title IX requires UO to "provide equal athletic opportunity for members of both sexes." *Mansourian v. Regents of Univ. of Cal.*, 602 F.2d 957, 964 (9th Cir. 2010) (quoting 34 C.F.R. § 106.41(c)). A component of this requirement asks whether "the selection of sports and levels of competition effectively accommodate the interests and *abilities* of members of both sexes." *Id.* (emphasis added).

The Rowing Plaintiffs do not convince this Court that they have the *abilities* to participate in varsity athletics at the University, and therefore they are not being deprived of the *opportunity*

15 – OPINION & ORDER

to participate in varsity athletics. Their recorded rowing race times are substantially inferior to even the worst performing Division I rowing teams. *See* Crooks Decl. Ex. 2; Crooks Ex. 3 at 9, 12; Crooks Decl. Ex. (Haverland Depo.) 42:11–16. While race times may vary depending on a variety of factors—dates, courses, conditions, etc.—the Rowing Plaintiffs offer nothing more than self-serving declarations to demonstrate their varsity-level abilities. *See* Tholin Decl. Ex. A ("Haverland Depo."); Ex. B ("Ribeiro Depo."); Ex. C ("Schmitz Depo."), ECF No. 149. The Rowing Plaintiffs fail to show by a preponderance of the evidence that they are members of their proposed class of students who are interested and capable of being on a varsity team. Moreover, the established record of the Rowing Plaintiffs' inability to compete on a varsity level subjects them to a unique defense that defeats typicality. Consequently, certification of the Effective Accommodation class is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification, ECF No. 103, is DENIED as to their Treatment and Benefits classes, Financial Aid damages class, and Effective Accommodation class. As previously stated, the Court will determine certification of a Financial Aid injunctive class following a ruling on the merits.

IT IS SO ORDERED.

DATED this 28th day of May, 2026.

s/Michael J. McShane     
Michael J. McShane
United States District Judge

16 – OPINION & ORDER